KENTUCKY RIVER MEDICAL CEN-
TER; and Jackson Hospital Cor-
poration, Appellants,

v.

Irene McINTOSH, Appellee.

No. 2008–SC–000464–DG.

Supreme Court of Kentucky.

Aug. 26, 2010.

Martin Allen Arnett, William P. Swain, Denis Carl Wiggins, William Baxter Orberson, Phillips, Parker, Orberson & Arnett, PLC, Louisville, KY, Counsel for Appellants.

Christopher W. Goode, Bubalo, Hiestand & Rotman, PLC, Lexington, KY, Counsel for Appellee.

Opinion of the Court by Justice NOBLE.

Kentucky River Medical Center and Jackson Hospital Corporation (collectively "the Hospital") appeal from a decision of the Court of Appeals, which affirmed a judgment of the Breathitt Circuit Court. The principal issue on appeal is whether the trial court should have granted the Hospital's motion for a judgment notwithstanding the verdict because the open and obvious doctrine barred the plaintiff's recovery as a matter of law. For the following reasons, the Court of Appeals is affirmed.

## I. Background

On May 27, 2004, McIntosh, a trained and licensed paramedic, was transporting a critically ill patient to the Hospital. She and two Emergency Medical Technicians (EMTs) arrived at the ambulance dock, and began guiding the patient to the emergency room entrance.

Immediately outside the emergency room entrance there is a flat surface which is eleven feet wide to allow stretchers to be wheeled directly from the ambulance dock into the emergency room. This flat area rises on both sides to form a curb. This curb is unmarked and unprotected. Essentially, the area looks like a wide curb ramp used for wheelchair access, except that the "ramp" part is flat rather than at an incline.

McIntosh had helped transport about 400 patients to this emergency room entrance before, and she had always navigated past the protruding curb without incident. However, this time she tripped and fell over it, suffering a fractured hip and sprained wrist. McIntosh sued the Hospital, arguing that the curb was an unreasonably dangerous condition which caused her injuries.

While moving towards the entrance, McIntosh's attention was not focused on the curb; rather, she remained focused on attending to the critically ill patient. She testified that when transporting patients from the ambulance dock to the emergency room doors, it is the duty of a paramedic to remain focused on the patient's health and to make sure his intravenous lines do not get caught in the wheels of the stretcher, among other things. (In contrast, EMTs have the duty to physically push the patient from the ambulance to the doors.) One of the patient's family members testi-

fied that McIntosh was completely focused on the patient as he was pushed to the entrance.

In addition, evidence was introduced showing that having such a tripping hazard at an emergency room entrance is very rare, if not unique in Breathitt County and the counties adjoining it. In particular, McIntosh testified that she transports patients to several nearby hospitals and that none of them have any uneven surface between the ambulance dock and the doors. An EMT working for McIntosh also testified that among the eight to ten other entrances he had used, the Hospital was the only one that had a ledge or curb near the emergency room entrance. He stated: "They're all smooth." This was verified by a number of photographs of the entrances of nearby hospitals.

The Hospital moved the trial court for summary judgment, claiming that the open and obvious doctrine barred McIntosh's recovery as a matter of law. After considering the parties' briefs, the trial court summarily denied this motion.

Ultimately, the jury found the Hospital liable. It awarded McIntosh $40,409.70 for medical expenses, $65,000 for impairment of her earning capacity, and $50,000 for pain and suffering, for a total of $155,409.70. The Hospital then moved for a judgment notwithstanding the verdict, renewing its argument about the open and obvious doctrine, which the trial court denied. The Hospital appealed to the Court of Appeals, which affirmed because "the Hospital could reasonably expect that a paramedic treating a critically-ill patient could be distracted, could forget (if she had ever observed it) that the curb was uneven, and could fail to protect herself against it." This Court granted discretionary review to determine whether the open and obvious doctrine should have completely barred McIntosh's cause of action.

## II. Analysis

### A. The Open and Obvious Doctrine

■ The Hospital first argues that the trial court should have granted its motions for summary judgment and for a judgment notwithstanding the verdict because the curb over which McIntosh tripped was an open and obvious danger. The standards for summary judgment and for a judgment notwithstanding the verdict are identical, *Cassinelli v. Begley,* 433 S.W.2d 651, 652 (Ky.1968). Both motions must be granted if and only if there is "no genuine issue as to any material fact" in the case. CR 56.03; *see also Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476, 480–81 (Ky.1991).

■ As a general rule, land possessors owe a duty to invitees to discover unreasonably dangerous conditions on the land and to either correct them or warn of them. *Perry v. Williamson,* 824 S.W.2d 869, 875 (Ky.1992). However, the open and obvious doctrine states that land possessors cannot be held liable to invitees who are injured by open and obvious dangers. Restatement (First) of Torts § 340 (1934). The question then is whether the applicability of the doctrine is a question of law or of fact.

The Hospital argues that the question is one of law—specifically, that the open and obvious doctrine means that land possessors are absolved of their duty, and "[t]he question of duty presents an issue of law." *Mullins v. Commonwealth Life Ins. Co.,* 839 S.W.2d 245, 248 (Ky.1992) (citations omitted). If the Hospital is correct that the open and obvious doctrine relates to duty (and is also correct that the danger in this case was actually open and obvious), then there was no genuine issue as to a material fact in the case, and the trial court should have granted the motions.

McIntosh responds that the existence of an open and obvious danger does not go to duty, but goes to the factual issue of fault. Under her view, the open and obvious doctrine could at most show that the invitee was partially at fault for failing to avoid injury. Consequently, how much fault should be placed on the invitee (for falling victim to a danger which is obvious) and how much should be placed on the land possessor (for failing to fix or warn of a danger which is obvious) would be a question for the jury.

Which of these two views is correct is not clear from the history of the doctrine because it arose in the era of contributory negligence. Under contributory negligence, any negligence on the part of the plaintiff completely barred recovery. Thus, it was irrelevant whether an open and obvious danger "excused a land possessor's duty to an invitee, or simply insulated the possessor from liability" by virtue of the plaintiff's contributory negligence in avoiding his own injury. "In either event, the injured invitee could not recover." *Harrison v. Taylor*, 115 Idaho 588, 768 P.2d 1321, 1325 (1989). Some courts in that era explained the doctrine in terms of duty and others did so in terms of the plaintiff's contributory negligence, *see generally* Page Keeton, *Personal Injuries Resulting from Open and Obvious Conditions*, 100 U. Pa. L.Rev. 629 (1952), but the precise doctrinal rationale was not carefully considered because it made no difference at that time.

However, almost all states now have comparative fault—including Kentucky, *see Hilen v. Hays*, 673 S.W.2d 713, 720 (Ky.1984); *see also* KRS 411.182(1)(a)-(b). Under comparative fault, whether the doctrine concerns duty or fault becomes very important. *Harrison*, 768 P.2d at 1325.

If duty is not excused by a known or obvious danger, the injured invitee might recover, albeit in a diminished amount, [by virtue of his own comparative fault]. In contrast, if the invitee's voluntary encounter with a known or obvious danger were deemed to excuse the land owner's duty, then there would be no negligence to compare—and, therefore, no recovery.

*Id.* This distinction is the principal issue of this case.

Our sister states do not unanimously agree about the correct answer. However, "[t]he manifest trend of the courts in this country is away from the traditional rule absolving, *ipso facto*, owners and occupiers of land from liability for injuries resulting from known or obvious conditions." *Ward v. K Mart*, 136 Ill.2d 132, 143 Ill.Dec. 288, 554 N.E.2d 223, 231 (1990). Instead, these courts allow the jury to evaluate the comparative fault of the parties, typical in modern negligence cases.

The courts following this trend typically adopt the position of the Restatement (Second) of Torts with respect to open and obvious conditions, which states:

A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness.*

Restatement (Second) of Torts § 343A(1) (1965) (emphasis added). The commentary to this section elaborates on the emphasized clause:

There are ... cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger.....

Such reason to expect harm to the visitor from known or obvious dangers

may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk. In such cases the fact that the danger is known, or is obvious ... is not ... conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances. *Id.* cmt. f. Under the Restatement (Second) view, in such cases the land possessor may still owe a duty of reasonable care, which may require him to "take other reasonable steps to protect [the invitee] against the known or obvious condition." *Id.* The current, tentative draft of the Restatement (Third) takes a position consistent with the Restatement (Second), except that it "amplifie[s]" duties on land possessors in certain situations. *See* Restatement (Third) of Torts: Liab. Physical Harm § 51 cmt. k (T.D. No. 6, 2009).

Despite the "manifest trend of the courts in this country," *Ward*, 143 Ill.Dec. 288, 554 N.E.2d at 231, and the persuasive power of the Restatement, "[a] few courts" still maintain that the doctrine is really one of duty. *See* Restatement (Third) of Torts: Liab. Physical Harm § 51, reporters' notes cmt. k. These courts typically start by reasoning that a land possessor's duties to protect invitees "is predicated upon [his] superior knowledge concerning the dangers of his property." *Janis v. Nash Finch Co.*, 780 N.W.2d 497, 502 (S.D. 2010). In the usual case, a land possessor's better knowledge regarding the premises means that he is in the better position to prevent the harm. However, in the case of open and obvious dangers, the invitee should be just as aware of the danger. Thus, these courts maintain that the basis for placing a duty on the land possessor—his superior knowledge—does not exist when the danger is truly open and obvious. Therefore, they rule that no duty should be imposed.

Both of these positions have some initial appeal. However, this Court concludes that the modern trend, as embodied in the Restatement (Second) of Torts, is the better position.

The modern approach is consistent with Kentucky's focus on foreseeability in its analysis of whether or not a defendant has a duty. This Court has previously stated that "[t]he most important factor in determining whether a duty exists is foreseeability." *Pathways v. Hammons*, 113 S.W.3d 85, 89 (Ky.2003) (citing David J. Leibson, Kentucky Practice, Tort Law § 10.3 (1995)). That harm from an open and obvious danger can sometimes be foreseeable suggests that there should be some remaining duty on the land possessor:

The principles stated in the Restatement (Second) of Torts § 343A relate directly to foreseeability and facilitate consideration of the duty issue. Whether the danger was known and appreciated by the plaintiff, whether the risk was obvious to a person exercising reasonable perception, intelligence, and judgment, and whether there was some other reason for the defendant to foresee the harm, are all relevant considerations that provide more balance and insight to the analysis than merely labeling a particular risk "open and obvious." In sum, the analysis recognizes that a risk of harm may be foreseeable and unreasonable, thereby imposing a duty on the

defendant, despite its potentially open and obvious nature.

*Coln v. City of Savannah,* 966 S.W.2d 34, 42 (Tenn.1998).

The focus on foreseeability is precisely why subsection 343A(1) of the Restatement creates an exception to the rule that a land possessor will not be liable for open and obvious dangers when "the possessor should anticipate the harm" anyway. For many open and obvious dangers, the land possessor would have no reason to anticipate the harm, and so he would not be liable. However, sometimes "the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." Restatement (Second) of Torts § 343A(1) cmt. f. In these situations, the injury is still foreseeable, and so liability should still be imposed. *Id.* This is nothing more than continuing to recognize that "[t]he most important factor in determining whether a duty exists is foreseeability," *Pathways,* 113 S.W.3d at 89, and is why the modern approach makes a great deal of sense.

Further, the modern approach is more consistent with Kentucky's rule of comparative fault. By concluding that a danger was open and obvious, we can conclude that the invitee was negligent for falling victim to it, unless for some reason "to a reasonable man in his position the advantages of [encountering the danger] would outweigh the apparent risk." Restatement (Third) of Torts: Liab. Physical Harm § 51 cmt. f. But this does not necessarily mean that the land possessor was not also negligent for failing to fix an unreasonable danger in the first place. Under our rule of comparative fault, the defendant should be held responsible for his own negligence, if any.

For this reason, to allow known or obvious conditions to always absolve land possessors from any liability "would be to resurrect contributory negligence" in such cases. *Harrison,* 768 P.2d at 1325. As the reporters' notes to the current draft of the Restatement (Third) of Torts state:

> The rule that a land possessor was not subject to liability for any open and obvious danger is much easier to justify in an era when contributory negligence constituted a complete bar to recovery. An entrant who fails to take self-protective measures may be contributorily negligent and, if so, that would avoid any liability by the possessor. However, such a rule cannot be justified after contributory negligence becomes a comparative defense.... In that respect, other earlier rules applicable to a land possessor's duties appear premised on and incorporate contributory negligence as a complete defense to liability.

Restatement (Third) of Torts: Liab. Physical Harm § 51, reporters' notes cmt. k.

The incompatibility between the open and obvious doctrine as an absolute, automatic bar to recovery and comparative fault is great. So great, in fact, that a few states have held that their comparative negligence statutes abolished the open and obvious doctrine outright. *E.g., Harrison,* 768 P.2d at 1326 (stating that "[t]he open and obvious danger doctrine, born in the era ... of contributory negligence, has been abolished legislatively through the adoption of I.C. § 6–801," where that statute provides that "[c]ontributory negligence shall not bar recovery in an action ... to recover damages for negligence"). The incompatibility between the traditional open and obvious rule and comparative fault is palpable; any incompatibility should be resolved in favor of comparative fault.

This makes good policy sense. As the Supreme Court of Mississippi aptly stated:

This Court should discourage unreasonably dangerous conditions rather than fostering them in their obvious forms. It is anomalous to find that a defendant has a duty to provide reasonably safe premises and at the same time deny a plaintiff recovery from a breach of that same duty. The party in the best position to eliminate a dangerous condition should be burdened with that responsibility. If a dangerous condition is obvious to the plaintiff, then surely it is obvious to the defendant as well. The defendant, accordingly, should alleviate the danger.

*Tharp v. Bunge Corp.*, 641 So.2d 20, 25 (Miss.1994).

In addition, this is consistent with our most recent case on-point, *Horne v. Precision Cars of Lexington, Inc.*, 170 S.W.3d 364 (Ky.2005). In *Horne*, this Court endorsed the Restatement (Second) view throughout the opinion. *Id.* at 367–70. And, in particular, *Horne* cites section 343A(1) of the Restatement and its supporting commentary for the proposition that a land possessor may be held liable for open and obvious dangers if "the possessor should anticipate the harm despite [its] . . . obviousness." Although this Court ultimately concluded that the danger "was not 'known or obvious to'" the plaintiff, this Court concluded in the alternative that

the facts of this case would fall within Restatement § 343A, comment f, because [the land possessor] would expect that a customer . . . "may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it."

*Id.* at 370.

■ The lower courts should not merely label a danger as "obvious" and then deny recovery. Rather, they must ask whether the land possessor could reasonably foresee that an invitee would be injured by the danger. If the land possessor can foresee the injury, but nevertheless fails to take reasonable precautions to prevent the injury, he can be held liable. Thus, this Court rejects the minority position, which absolves, *ipso facto*, land possessors from liability when a court labels the danger open and obvious.

However, this view also alters the position of the person injured by an open and obvious danger to the extent that only under extremely rare circumstances could a plaintiff avoid some share of the fault under comparative negligence. While "open and obvious danger" is no longer a complete defense under the Restatement, it is nonetheless a heightened type of danger which places a higher duty on the plaintiff to look out for his own safety. Such a condition, being open and obvious, should usually be noticed by a plaintiff who is paying reasonable attention. Yet the plaintiff is not completely without a defense to this: there could be foreseeable distraction, or the intervention of a third party pushing the plaintiff into the danger, for example. Even in such situations, a jury could still reasonably find some degree of fault by the plaintiff, depending on the facts.

As noted above, a few courts state that a land possessor's duty to invitees "is predicated upon [his] superior knowledge concerning the dangers of his property," *Janis*, 780 N.W.2d at 502, something which is absent when the danger is obvious to all. *E.g., Ethyl Corp. v. Johnson*, 345 Ark. 476, 49 S.W.3d 644, 650 (2001); *La Quinta Inns, Inc. v. Leech*, 289 Ga.App. 812, 658 S.E.2d 637, 642 (2008). These courts therefore conclude that no duty should be imposed when dangers are obvious. This

conclusion is mistaken, however, because it is based on a false premise: A land possessor's duties are not based only on his superior knowledge.

These duties are also based on the land possessor's unique position as the only person who can fix the dangers. An invitee can always try to avoid dangers of which he is aware, but only land possessors and owners can legally remove them. So although it is true that when the danger is obvious the land possessor does not have superior knowledge, the land possessor still has the superior ability to issue repairs.

The minority view is no doubt confused because it is often said that "there is no duty to warn for open and obvious dangers." Restatement (Third) of Torts: Liab. Physical Harm § 51 cmt. k. The purpose of a warning is to equalize the parties' knowledge about the danger. So when we presume their knowledge is already equal, as we do for obvious conditions, the warning could serve no purpose. Thus, "[t]he conclusion that there is no liability for open and obvious dangers *for which the only reasonable precaution is warning* is correct." *Id.* (Emphasis added.)

■ However, the absence of the duty to warn does not mean there is no duty at all, simply because "the duty of reasonable care may require precautions other than a warning, including employing durable precautions that eliminate or reduce the risk posed." *Id.* Even though it will often make little sense to impose liability on land possessors for failing to warn invitees of conditions which are obvious, it makes a great deal of sense to impose liability on them for failing to *eliminate or reduce* the risk posed by unreasonable dangers. In short, "[e]ven where the condition is open and obvious, a landowner's duty to maintain property in a reasonably safe condi-

tion is not obviated; it merely negates the requirement to warn of such a condition." *Phelan v. State,* 11 Misc.3d 151, 804 N.Y.S.2d 886, 898 (N.Y. Ct. Claims 2005). The minority view overlooks this point, and for that reason this Court cannot follow it.

■ Turning to this case, this Court concludes that the Hospital owed a duty to McIntosh. This conclusion is based on our adherence to the Restatement (Second) approach to open and obvious dangers, as in *Horne,* as well as our continued belief that "[t]he most important factor in determining whether a duty exists is foreseeability." *Pathways,* 113 S.W.3d at 89 (citation omitted). There can be no doubt in this case that the injury was foreseeable.

The Hospital had good reason to expect that a paramedic, such as McIntosh, would be distracted as she approached the emergency room entrance. There was testimony that paramedics have a duty to focus on the patient while the EMTs guide them into the emergency room, including monitoring the patients' health and making sure their intravenous lines do not become entangled on the wheels of the stretcher. (There was also testimony that McIntosh ably fulfilled her duty by remaining focused on the critically ill patient as the EMTs pushed him to the doors.) The need to focus on the patient necessarily means taking attention away from other tasks, such as carefully navigating past a protruding curb. Thus, even though the curb may have been open and noticeable to some extent, in this case "the possessor has reason to expect that the invitee's attention may be distracted" from it. Restatement (Second) § 343A cmt. f. The Hospital had very good reason to believe McIntosh would be tending to the patient, not to each step she was taking.

In addition, "the possessor has reason to expect that the invitee[ ] ... will forget what he has discovered." *Id.* Evidence was introduced showing that having such a curb at an emergency room entrance is very unusual, if not unique. McIntosh and an EMT testified that none of the numerous other hospitals they went to had any uneven surfaces between the ambulance dock and the emergency room doors; this was verified by pictures of nearby hospitals. Paramedics will rarely have the luxury of calmly walking towards an emergency room entrance. They are required to think and act quickly in the most time-sensitive and stressful of circumstances. It is likely that in such a situation, a paramedic such as McIntosh may forget that this particular entrance has a unique danger that she must avoid. Indeed, it is foreseeable that McIntosh may absent-mindedly assume that this entrance was just as safely constructed as any other, causing her to trip. She should be entitled to assume that this entrance is safe, too. And the extent to which her absentmindedness comes into play should bear only on her comparative fault rather than as an absolute bar to her recovery.

It is important to stress the context in which McIntosh sustained her injury: she was rushing a critically ill patient into a hospital, in an effort to save his life. Even if we assume that she was neither distracted nor forgetful about the curb, we would still have to conclude that the benefits of her rushing to the door (at the risk of tripping over the curb) outweighed the costs of her failing to do so (at the risk of the patient's condition worsening, perhaps to the point of death, on the Hospital doorstep). The dire need to rush critically ill patients through the emergency room entrance should be self-evident, and as such, "the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a

reasonable man in his position the advantages of doing so would outweigh the apparent risk." Restatement (Second) § 343A cmt. f. This is another reason this injury is foreseeable and that a duty existed in this case.

■ Admittedly, it may seem at first that McIntosh was not a particularly sympathetic plaintiff because, as the Hospital points out, she "had encountered [the danger] on many, many occasions." She testified that she had safely navigated the entrance hundreds of times before her injury. Our intuition is that McIntosh's familiarity with the danger makes her a less worthy plaintiff. This is no doubt why the Hospital stresses this point in its brief.

But this intuition reveals it is not the Hospital's duty, but McIntosh's comparative fault, that matters to us. If the issue here was one of duty and duty alone, then it would not matter how many times she had encountered the danger (assuming, of course, this Court were to label the curb "obvious"). If she had never been to this emergency room entrance even once before, the Hospital would still owe her no duty, and the same result would follow.

The most logical way of taking this factor into account is to say that if she has familiarity with the danger, then she is at fault for failing to avoid it, and to reduce her recovery accordingly. The greater her familiarity, the greater her own fault. The jury is fully capable of considering how a person's familiarity with a danger should bear upon his respective share of fault, if at all. In addition, in this case the plaintiff had the defense of foreseeable distraction, as she was attending her patient. That sort of analysis is exactly what comparative fault analysis requires the jury to do; thus, the jury was properly instructed to compare the faults of the parties in this case.

In the present case, the Hospital owed a duty to McIntosh, given that her injury was foreseeable. McIntosh, in turn, had a duty to act reasonably to ensure her own safety, heightened by her familiarity with the location and the arguably open and obvious nature of the danger. Thus, there were genuine issues of material fact that were properly submitted to the jury. CR 56.03; *see also Steelvest,* 807 S.W.2d at 480–81. For that reason, the trial court correctly denied the Hospital's motions for a directed verdict and for a judgment notwithstanding the verdict. While reasonable minds could differ whether McIntosh was to some degree at fault under these facts, all the evidence was before the jury and was argued to them. This Court cannot say that their finding that McIntosh bore no comparative fault is clearly erroneous.

## B. Evidentiary Issues

The Hospital also raises two evidentiary issues on appeal. This Court concludes that these are not error.

### 1. Photographs

First, the Hospital argues that photographs of emergency room entrances at other hospitals (as well as its own main entrance) were irrelevant under KRE 401, or were unduly prejudicial under KRE 403.

Under KRE 401: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." And KRE 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." The trial court's decision to admit this evidence is reviewed for an abuse of discretion. *See, e.g., Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky.1999). A trial court abuses its discretion if its decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.*

The trial court did not abuse its discretion in admitting these photographs into evidence. Among other reasons, the photographs were relevant to show alternative designs that could have feasibly been used; to show the Hospital could foresee paramedics would trip over the curb, given that paramedics may falsely assume that the entrance would be as safely designed as any other hospital; to show that even though McIntosh had been to this entrance numerous times, the "possessor has reason to expect [she] will forget what she has discovered," Restatement (Second) of Torts § 343A, since she may forget that this particular hospital lacks the same safety precautions that all other hospitals in the area have; and to show that she may be reasonably distracted.

Likewise, the photograph of the Hospital's front entrance goes to show that the Hospital was aware—or at least should have been aware—of alternative designs that would eliminate tripping hazards and that the emergency room entrance presented such an additional hazard. Although the Hospital is correct that the front entrance and emergency room entrance have different sorts of traffic, this is a fact that can be easily pointed out at trial, and this Court does not think it is beyond the capability of the jury to understand this distinction, especially given the testimony about the unique safety requirements of emergency room entrances.

In short, there is no doubt the photographs were relevant. And the Hospital has failed to show that the probative value

of these pictures was "substantially outweighed" by the risk of undue prejudice. KRE 401, 403. There was no error.

## 2. Expert Testimony

■ Second, the Hospital argues that the trial court erred in allowing the testimony of McIntosh's expert witness, James Lapping. Lapping testified as an expert regarding the safety of emergency room entrances. He is an engineer and certified safety professional. He served as the safety director for the AFL–CIO for over two decades, and he also worked for the Occupational Safety and Health Administration (OSHA), where he wrote training programs for safety inspectors. Lapping testified that to make the entrance safe, the Hospital should have leveled it, installed guardrails to prevent tripping, or used paint to mark the area. He also testified that the entrance violated OSHA regulations.

The Hospital argues that the jury did not need expert testimony to determine whether the emergency room entrance was safe because the issue was within their common knowledge. This Court has previously stated:

> The real question should not be whether the expert has rendered an opinion as to the ultimate issue, but whether the opinion "will assist the trier of fact to understand the evidence or to determine a fact in issue." KRE 702. Generally, expert opinion testimony is admitted when the issue upon which the evidence is offered is one of science and skill, . . . and when the subject matter is outside the common knowledge of jurors.

*Stringer v. Commonwealth,* 956 S.W.2d 883, 889–90 (Ky.1997).

This Court concludes that the testimony was properly admitted. Members of the public are familiar with the main entrances to hospitals. However, they are less familiar with emergency room entrances, which are used primarily by specialized professionals such as paramedics and EMTs. In addition, members of the public are not familiar with OSHA regulations governing the treatment of physical hazards. It was not an abuse of discretion to allow the jury to hear expert testimony about the proper safety features and regulations of emergency room entrances. These hospital entrances have a special purpose and are used by professionals in distinct and stressful emergency situations. Consequently, the safety requirements for such of the entrances may be "outside the common knowledge of jurors." *Id.* Admitting this testimony was not an abuse of discretion.

■ The Hospital also argues that Lapping's testimony was improper because it was undermined during cross-examination. Specifically, the Hospital notes that Lapping admitted he was unaware of McIntosh's familiarity with the entrance or that OSHA had investigated the entrance and found no violations. This is good impeachment and rebuttal evidence, and it was all heard and duly considered by the jury. Importantly, expert testimony does not need to be flawless to be admissible.

■ Last, the Hospital complains that Lapping was allowed to address the jury for twelve to thirteen minutes uninterrupted, rather than in the typical question-and-answer format. The Court of Appeals declined to review this error because the Hospital failed to make a "contemporaneous objection . . . to the manner of his testimony." On appeal to this Court, the Hospital admits they made no such objection. Accordingly, this Court concludes that if error, this is not reversible error, as it does not rise to the level of "manifest injustice." CR 61.02.

### III. Conclusion

For the foregoing reasons, the Court of Appeals is affirmed.

MINTON, C.J.; ABRAMSON, CUNNINGHAM and VENTERS, JJ., concur.

SCHRODER, J., dissents by separate opinion in which SCOTT, J., joins.

SCHRODER, J., dissenting:

Because I believe the open and obvious doctrine concerns a question of duty, I respectfully dissent. The other hospitals McIntosh served had no curbs to trip over. Appellants had a curb, which contained no building code or OSHA violations, and was open and obvious. It appears the Appellants are being held liable for a breach of a duty: a duty to build its emergency entrance like other hospitals in an undefined area. Until this decision, there was no such duty. Until today, a landowner or possessor of land could not be held liable to invitees who were injured by open and obvious dangers. Now, even though the alleged danger is open and obvious (like snow or ice on a sidewalk), if the possessor can anticipate the harm to an invitee, the possessor has a duty to fix the condition, or to somehow give additional warnings. In this case, to avoid future liability, the hospital will need to build the same type of entrance ramp as some unknown group of hospitals. This is an unwise and unnecessary change in the law in the Commonwealth.

SCOTT, J., joins.