**Rhoda FALLER, Appellant,**

v.

**ENDICOTT–MAYFLOWER, LLC; Professional Property Managers, LLC; and Rader Enterprises, Inc., d/b/a Buck's Restaurant, Appellees.**

No. 2008–CA–001506–MR.

Court of Appeals of Kentucky.

July 1, 2011.

Discretionary Review Denied by Supreme Court Dec. 14, 2011.

Glenn A. Cohen, Lynn M. Watson, Louisville, KY, for appellant.

Robert E. Stopher, Robert D. Bobrow, Louisville, KY, for Appellees, Endicott–Mayflower, LLC and Professional Property Managers, LLC.

R. Hite Nally, Russell H. Saunders, Louisville, KY, for Appellee, Rader Enterprises, Inc. d/b/a Buck's Restaurant.

Before TAYLOR, Chief Judge; COMBS and NICKELL, Judges.

*OPINION*

NICKELL, Judge:

This Court previously rendered an Opinion affirming this case. *See Faller v. Endicott–Mayflower, LLC,* 2009 WL 3878062 (Ky.App.2009). The case is before us again after the Kentucky Supreme Court granted discretionary review and remanded it to us for reconsideration in light of *Kentucky River Medical Center v. McIntosh,* 319 S.W.3d 385 (Ky.2010). Having reconsidered our original opinion, we again affirm.

At the heart of this appeal is Rhoda Faller's fall while leaving a Louisville restaurant. She claims she fell because the historic eatery's threshold was too narrow and the trial court erred in granting summary judgment to the restaurant. We begin with a recap of the facts from our original opinion:

> On the afternoon of December 30, 2004, Rhoda met colleagues for a belated holiday gathering at Buck's Restaurant, a fine dining establishment and cigar room located on the first floor of the historic Mayflower Apartment Building in Old Louisville. Rader owns and operates Buck's Restaurant in a location leased from Mayflower, owner of the

Mayflower Apartment Building.[1] After arriving at the Mayflower Apartment Building, her fourth or fifth such visit to Buck's in recent years, Rhoda walked down the cobblestone path leading to Buck's entryway, pulled open the door, and stepped up into Buck's vestibule—crossing the threshold from which she would later fall.

Buck's threshold is relatively common. Because it is the subject of Rhoda's lawsuit, we describe it in detail. Construction of the Mayflower Apartment Building began in 1924 and was completed in 1926. Buck's has a primitive doorsill—a single piece of stone the width of the door. Resting below the doorway, it protrudes about two inches from the building's façade, and rises about four inches above a cobblestone path. Affixed to the stone doorsill, and abutting the tiled floor of the vestibule, is a modern, aluminum doorsill that is the same width as the door and about four inches deep. The modern doorsill is raised slightly, but flush with the door. When the door is closed, portions of the modern doorsill extend from both sides of the door and are covered in yellow- and black-striped caution tape. Rhoda maintains Buck's threshold is defective because it is not as wide as the accompanying door. She expected the threshold to be wide enough for her to take two steps, but it was wide enough for only one step. She asserts the narrowness of the threshold is the reason she fell.

After the gathering concluded, Rhoda walked through the vestibule, followed by her paralegal. Using her right hand, Rhoda pushed open the door which was hinged on her right, and stepped onto the threshold with her right foot. As she did, Rhoda twisted to her right, looking over her outstretched right arm and back into the vestibule to insure the door would not hit her paralegal when she released it. According to Rhoda's deposition, when she stepped out of the vestibule with her left foot, it "unexpectedly dropped" to the cobblestone path, causing her to fall.

As a result of her fall, Rhoda sustained a compound trimalleolar fracture of her left tibia and fibula. She was transported to Baptist East Hospital by ambulance where she underwent surgery on her lower leg. During the surgery, two pins were placed in her tibia and a plate was screwed into her fibula. She remained in the hospital for four days and three nights, and upon her release, was forbidden from placing any weight on her left leg for a month, practically confining her to bed or a wheelchair. Since recovering she has relied on a cane to walk and has experienced vascular problems causing increased swelling in her left ankle. Because her vascular problems are aggravated by flying, and air travel is essential to her work as a medical malpractice attorney, Rhoda no longer handles medical malpractice cases.

On December 16, 2005, Rhoda filed a complaint alleging Rader, Mayflower and PPM breached a duty owed to her by: (1) failing to reasonably design, construct and maintain the exit area of the property and business in a reasonably safe condition; (2) negligently constructing a step in an unreasonably dangerous area; and (3) failing to warn of the unreasonably dangerous exit area and step, thus creating a dangerous condition. After answering interrogatories, responding to requests for production and deposing Rhoda, Rader moved for summary judgment alleging Rhoda's

1. A third appellee, Professional Property Managers, LLC, will be referred to as PPM.

own words eliminated any genuine issue of material fact. Further, Rader argued it was entitled to judgment as a matter of law because: (1) there were no violations of the Kentucky Building Code; (2) the threshold's condition was open and obvious; (3) Rhoda knew of the threshold's condition; (4) Rader had satisfied any duty to warn of the threshold's condition by placing yellow- and black-striped caution tape over the aluminum doorsill; (5) the proximate cause of Rhoda's fall was her own inattentiveness in failing to look where she was walking; and (6) Rhoda failed to articulate any cause for her fall warranting judgment in her favor.

Before responding, Rhoda deposed Curtis Rader, a representative of Rader, and John Endicott, a representative of Mayflower. Thereafter, Mayflower and PPM jointly moved for summary judgment. In doing so, they adopted Rader's arguments, but alternatively argued that the terms of the lease between Mayflower and Rader made Rader solely responsible for any building code violations at the site of Rhoda's fall.

In response to both motions for summary judgment, Rhoda tied the appellees' liability for her injury to one of two conditions: either the threshold violated the Kentucky Building Code, or the appellees failed to anticipate that an invitee could be harmed by the threshold's allegedly dangerous condition. Further, Rhoda alleged that there were genuine issues of material fact regarding whether the threshold was open and obvious, whether acts or omissions of the appellees substantially caused her injury, and whether Rader or Mayflower exercised control over the threshold. Finally, she claimed jurors should decide whether: the caution tape provided a sufficient warning; the motion for summary judgment was premature; and statements in her deposition constituted judicial admissions.

On July 9, 2008, the circuit court granted summary judgment in favor of each appellee, finding the threshold's condition was open and obvious; Rhoda knew of the threshold's condition before she fell; and she failed to exercise ordinary care for her own safety when leaving Buck's. Furthermore, after considering testimony from the previous owner of Buck's, as well as from Rader and Mayflower, the circuit court concluded Rhoda had not produced, and could not produce, sufficient affirmative evidence of a code violation to overcome the presumption created by KRS [Kentucky Revised Statutes] 98B.135 which states:

> [i]n any action alleging defective building design, construction, materials, or supplies where the injury, death, or property damage occurs more than five (5) years after the date of completion of construction or incorporation of materials or supplies into the building, there shall be a presumption that the building was not defective in design, construction, materials, or supplies. This presumption may be overcome by a preponderance of the evidence to the contrary.

According to testimony from Rader and Endicott, and an affidavit from Buck's previous owner, the threshold had not been changed for at least a dozen years before Rhoda's fall. As a result, the circuit court concluded the appellees were entitled to summary judgment as a matter of law because their actions did not substantially cause Rhoda's fall.

On appeal, Rhoda alleges the trial court erroneously reached four factual conclusions and two legal conclusions. First, she claims there were genuine issues of material fact regarding whether the threshold's condition was open

and obvious. Second, she argues that even if the threshold's condition was open and obvious, the appellees should have anticipated that an invitee would be harmed. Third, she claims the adequacy of the warning, the yellow- and black-striped caution tape, was a question of fact reserved for the jury. Fourth, she alleges that the circuit court analyzed the claim under a theory of contributory negligence, contrary to our Supreme Court's abolition of that doctrine as a total bar to recovery by a tort plaintiff in *Hilen v. Hays*, 673 S.W.2d 713 (Ky. 1984). Fifth, she claims there was a genuine issue of material fact regarding whether the dimensions of the threshold violated the Kentucky Building Code. Finally, she claims that the trial court granted summary judgment prematurely because discovery was incomplete.

Our original opinion affirmed the trial court's award of summary judgment to the appellees "because Rhoda did not demonstrate the existence of any genuine issue of material fact, and because her own testimony prevented her from prevailing as a matter of law." Additionally, we held that statements contained in Rhoda's deposition constituted judicial admissions; Rhoda knew the condition of Buck's threshold and assumed the risk of falling by continuing to patronize the restaurant; and, Buck's had no duty to warn Rhoda about the condition of its threshold which was presumed not to be deficiently designed due to the passage of time. Our original opinion was based in large measure upon *Horne v. Precision Cars of Lexington, Inc.*, 170 S.W.3d 364, 368–9 (Ky.2005), which states that a possessor of land is liable for an injury caused by a known or obvious hazard, but only if the possessor knew or should have known such a hazard would injure the invitee, and *J.C. Penney Co. v. Mayes*, 255 S.W.2d 639, 643 (Ky. 1953) (citing *Lachat v. Lutz*, 94 Ky. 287, 22

S.W. 218, 15 Ky. Law Rep. 75 (1893); and *Lyle v. Megerle*, 270 Ky. 227, 109 S.W.2d 598 (1937)), which states that an invitee's assumption that a premises "he has been invited to use are reasonably safe does not relieve him of the duty to exercise ordinary care for his own safety nor license him to walk blindly into dangers which are obvious, known to him, or that would be anticipated by one of ordinary prudence." We specifically held, "[t]here can be no award of damages in this case without a showing of a duty and a breach of that duty-neither of which has been established." *Faller*, 2009 WL 3878062 .

In *McIntosh*, our Supreme Court explored whether, under the comparative fault doctrine, an open and obvious danger excuses a land owner's duty to warn invitees of the danger or make repairs. The question arose in the context of whether, in a negligence action tried by a jury, a trial court correctly denied motions for summary judgment and a judgment notwithstanding the verdict filed by a hospital against a paramedic who fell at an ambulance dock while transporting a critically ill patient to the hospital's emergency room entrance. In rejecting the hospital's argument that the open and obvious doctrine barred the paramedic's recovery as a matter of law, the Supreme Court held that even though the paramedic had transported about 400 patients to the hospital's emergency room entrance without incident and was, therefore, familiar with the unmarked curb over which she fell, the hospital could still be held liable because her injury was "foreseeable."

*McIntosh* states the general rule in such cases as:

land possessors owe a duty to invitees to discover unreasonably dangerous conditions on the land and to either correct them or warn of them. *Perry v. Wil-*

*liamson,* 824 S.W.2d 869, 875 (Ky.1992). However, the open and obvious doctrine states that land possessors cannot be held liable to invitees who are injured by open and obvious dangers. Restatement (First) of Torts § 340 (1934).

319 S.W.3d at 388. The opinion goes on to hold that § 343A(1) of the Restatement (Second):

> creates an exception to the rule that a land possessor will not be liable for open and obvious dangers when "the possessor should anticipate the harm" anyway. For many open and obvious dangers, the land possessor would have no reason to anticipate the harm, and so he would not be liable. However, sometimes "the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." Restatement (Second) of Torts § 343A(1) cmt. f.

*Id.* at 391. Thus, under the Restatement (Second), which our Court has quoted with favor, labeling a danger as open and obvious does not automatically absolve a land possessor of liability. The inquiry then shifts to whether the invitee was foreseeably distracted or a third party pushed him into the danger.

Citing the Restatement (Second) and *Horne,* the Supreme Court held the hospital owed McIntosh a duty because her injury was foreseeable. It wrote:

> [t]he Hospital had good reason to expect that a paramedic, such as McIntosh, would be distracted as she approached the emergency room entrance. There was testimony that paramedics have a duty to focus on the patient while the EMTs guide them into the emergency room, including monitoring the patients' health and making sure their intravenous lines do not become entangled

on the wheels of the stretcher. (There was also testimony that McIntosh ably fulfilled her duty by remaining focused on the critically ill patient as the EMTs pushed him to the doors.) The need to focus on the patient necessarily means taking attention away from other tasks, such as carefully navigating past a protruding curb. Thus, even though the curb may have been open and noticeable to some extent, in this case "the possessor has reason to expect that the invitee's attention may be distracted" from it. Restatement (Second) § 343A cmt. f. The Hospital had very good reason to believe McIntosh would be tending to the patient, not to each step she was taking.

In addition, "the possessor has reason to expect that the invitee [ ] ... will forget what he has discovered." *Id.* Evidence was introduced showing that having such a curb at an emergency room entrance is very unusual, if not unique. McIntosh and an EMT testified that none of the numerous other hospitals they went to had any uneven surfaces between the ambulance dock and the emergency room doors; this was verified by pictures of nearby hospitals. Paramedics will rarely have the luxury of calmly walking towards an emergency room entrance. They are required to think and act quickly in the most time-sensitive and stressful of circumstances. It is likely that in such a situation, a paramedic such as McIntosh may forget that this particular entrance has a unique danger that she must avoid. Indeed, it is foreseeable that McIntosh may absentmindedly assume that this entrance was just as safely constructed as any other, causing her to trip. She should be entitled to assume that this entrance is safe, too. And the extent to which her absentmindedness comes into

play should bear only on her comparative fault rather than as an absolute bar to her recovery.

It is important to stress the context in which McIntosh sustained her injury: she was rushing a critically ill patient into a hospital, in an effort to save his life. Even if we assume that she was neither distracted nor forgetful about the curb, we would still have to conclude that the benefits of her rushing to the door (at the risk of tripping over the curb) outweighed the costs of her failing to do so (at the risk of the patient's condition worsening, perhaps to the point of death, on the Hospital doorstep). The dire need to rush critically ill patients through the emergency room entrance should be self-evident, and as such, "the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." Restatement (Second) § 343A cmt. f. This is another reason this injury is foreseeable and that a duty existed in this case. *McIntosh*, 319 S.W.3d at 393–394.

We turn now to the case *sub judice*. Unlike McIntosh, who tripped over an un-marked curb while rushing a critically ill patient into an emergency room, Rhoda tripped over a threshold marked with yellow- and black-striped caution tape while leaving a restaurant following a leisurely holiday meal. Rhoda admitted being familiar with the threshold, having traversed it on prior occasions, and admitted she would not have fallen had she been looking in the direction she was walking. The factual distinctions between *McIntosh* and Rhoda are too great for us to consider Rhoda's fall foreseeable. Therefore, we agree with the trial court's award of summary judgment to all three appellees and hold that *McIntosh* does not require a change in our original opinion.

For the foregoing reasons, we again affirm the decision of the Jefferson Circuit Court and our original opinion.

ALL CONCUR.