Robert **RESNICK** and Deborah Resnick, Appellants

v.

Charles Omer **PATTERSON**, Appellee

NO. 2011–CA–001657–MR

Court of Appeals of Kentucky.

NOVEMBER 23, 2016

BRIEF FOR APPELLANT: Christopher W. Goode, Stacy Hullett Ivey, Lexington, Kentucky

BRIEF FOR APPELLEES: W. Douglas Kemper, Louisville, Kentucky

BEFORE: KRAMER, CHIEF JUDGE; J. LAMBERT AND THOMPSON, JUDGES.

**J. LAMBERT, JUDGE:**

Robert Resnick initially appealed from an August 2011 order of the Bullitt Circuit Court entering summary judgment in favor of Charles Patterson. Upon review, this Court affirmed the trial court's entry of summary judgment in Patterson's favor. Resnick filed a motion for discretionary review with the Supreme Court of Kentucky. By order dated March 13, 2013, the Supreme Court ordered this Court's opinion be held in abeyance pending final resolution of *Miami Management Company v. Bruner*, 2012–SC–000318. On December 10, 2015, the Supreme Court granted Resnick's motion for discretionary review, vacated our prior opinion, and remanded the case to this Court for consideration in light of *Carter v. Bullitt Host, LLC*, 471 S.W.3d 288 (Ky. 2015); *Shelton v. Kentucky Easter Seals Society, Inc.*, 413 S.W.3d 901 (Ky. 2013); and *Dick's Sporting Goods, Inc. v. Webb*, 413 S.W.3d 891 (Ky. 2013). After consideration of these cases, we vacate the trial court's August 15, 2011, order granting summary judgment to Patterson and remand for proceedings consistent with this opinion.

On January 29, 2008, the appellant, Robert Resnick, received a phone call from his mother, Marilyn McQuillen, asking him to help her move out of the residence she shared with her boyfriend, Charles Patterson. McQuillen had been living with Patterson for approximately four years at that time, but their relationship and living situation appears to have been somewhat tumultuous. In the days prior to the phone call, McQuillen and Patterson had fought, and McQuillen had left to stay with a friend for a few days.

On January 29, 2008, McQuillen went to get some of her possessions from the house, including a change of clothes. Upon her arrival, she realized the locks had been changed and she was unable to get into the

residence. McQuillen then climbed through a window in the house, triggering an alarm. Police officers were dispatched to the home, and McQuillen discussed whether she had a lawful right to be on the premises with the responding officers. McQuillen was informed by the officers that she had a right to get her belongings and be at the residence.

While inside, McQuillen found a note from Patterson stating that if she did not get her possessions out of a shed in the backyard by the time he got home, he was going to have a bonfire with her belongings that night. Patterson also left a threatening note about the couple's dog, Fred, and left a bullet laying on top of a Post–It note which read, "This is for Fred." Patterson admitted to writing both notes, but testified at his deposition that he did not expect that McQuillen would be on the premises of his home after he changed the locks and that he thought she would call him to request permission to get her things. McQuillen testified at her deposition that Patterson intended for her to be in the house, or else he would not have left her a note about her belongings in the shed.

Upon seeing the note, McQuillen called her son and his wife, Deborah Resnick, for help packing her belongings.[1] When they arrived, the Resnicks began packing and moving boxes from a storage shed in the backyard onto a trailer in the driveway adjacent to the yard. Resnick testified that prior to that day he had never been in the backyard of Patterson's home.

As Resnick was carrying a box across the backyard, he stepped into a hole located next to some tree roots. This caused him to fall, and he landed directly on his right shoulder, which caused him serious injury. Approximately a month after the accident, Resnick went back to take photographs of the hole. He testified that it was hard for him to find the hole, and that he had to push the grass around with his feet to make it visible in order to get a picture. Resnick testified that at the time of his fall he did not think the hole was a new hole because it did not have fresh dirt around it. He believed the hole had been dug previously by a dog.

McQuillen had lived in the home with Patterson for several years when the accident occurred, and she testified that the yard looks flat, but it is deceptively "tilty" and has holes in it where the grass has grown up. She stated that the holes are not apparent until stepped into. At his deposition, Patterson testified that he had experience in lawn care and had worked for a landscaping company for approximately fourteen years. He testified that he was aware from mowing his own yard that there were some holes and protruding tree limbs in the yard, and he had filled some of the holes previously. At his deposition, Patterson admitted that there were some holes he had not filled.

On December 19, 2008, Resnick filed suit against Patterson, alleging negligence and failure to warn. Subsequently, Patterson wrote a letter to McQuillen "begging" her to return home, and in fact McQuillen was again living with Patterson when his deposition was taken on January 6, 2011. Since the accident, Patterson has removed the tree, ground the stump, and leveled the area where Resnick tripped and fell.

On August 15, 2011, the Bullitt Circuit Court entered summary judgment in favor of Patterson, finding that the hole and/or tree stump Resnick tripped on was an

1. Ms. McQuillen suffered from multiple sclerosis (MS) and was unable to move her belongings herself.

open and obvious natural hazard, and, as such, Patterson had no duty to warn Resnick of its existence. The trial court held that Patterson had no knowledge that Resnick would be on the property and therefore could not anticipate the harm that befell him. The trial court also emphasized that the hazard that caused Resnick to fall was naturally occurring and that Patterson did not have a duty to warn of a naturally occurring obvious hazard. As stated above, an initial appeal to this Court followed, in which we affirmed the trial court's entry of summary judgment.

In our initial opinion, we acknowledged the confusion the Supreme Court's opinion in *Kentucky River Medical Center v. McIntosh*, 319 S.W.3d 385 (Ky. 2010), created regarding the interplay of contributory negligence and comparative fault. Subsequent to our opinion, which was rendered on August 10, 2012, the Supreme Court rendered *Shelton v. Kentucky Easter Seals Society, Inc, supra*; *Dick's Sporting Goods v. Webb, supra*; and *Carter v. Bullitt Host, LLC, supra*. We now reexamine whether summary judgment was appropriate in light of the Supreme Court's more recent analysis of premises liability.

In *McIntosh*, the Kentucky Supreme Court held that the primary focus in determining whether a duty exists is on foreseeability. *McIntosh, supra*, at 390. The Court adopted the modern approach as embodied in the Restatement (Second) of Torts:

> The modern approach is consistent with Kentucky's focus on foreseeability in its analysis of whether or not a defendant has a duty. This Court has previously stated that "[t]he most important factor in determining whether a duty exists is foreseeability." *Pathways v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003) (*citing* David J. Leibson, Kentucky Practice,

Tort Law § 10.3 (1995)). That harm from an open and obvious danger can sometimes be foreseeable suggests that there should be some remaining duty on the land possessor:

> The principles stated in the Restatement (Second) of Torts § 343A relate directly to foreseeability and facilitate consideration of the duty issue. Whether the danger was known and appreciated by the plaintiff, whether the risk was obvious to a person exercising reasonable perception, intelligence, and judgment, and whether there was some other reason for the defendant to foresee the harm, are all relevant considerations that provide more balance and insight to the analysis than merely labeling a particular risk "open and obvious." In sum, the analysis recognizes that a risk of harm may be foreseeable and unreasonable, thereby imposing a duty on the defendant, despite its potentially open and obvious nature.

> *Coln v. City of Savannah*, 966 S.W.2d 34, 42 (Tenn. 1998).

*McIntosh, supra*, at 390–91. The Court criticized the open and obvious doctrine, stating:

> The lower courts should not merely label a danger as "obvious" and then deny recovery. Rather, they must ask whether the land possessor could reasonably foresee that an invitee would be injured by the danger. If the land possessor can foresee the injury, but nevertheless fails to take reasonable precautions to prevent the injury, he can be held liable.

*Id.* at 392. After *McIntosh*, trial courts struggled with whether the open and obvious doctrine was still applicable in certain circumstances.

In *Shelton v. Kentucky Easter Seals, Inc.*, the Supreme Court attempted to clarify *McIntosh*. The Court emphasized that,

with regard to an open and obvious danger, a determination of foreseeability was to be made by a jury. The Court stated:

Unfortunately, we did not speak clearly enough in *McIntosh*; and we now face squarely the confusion it produced. *McIntosh* was undeniably a step forward in the development of our tort law, but our holding regrettably allowed the obtuse no-duty determination to survive. The issue we attempted to address in *McIntosh* was whether the existence of an open and obvious danger was a legal question of duty or a factual question of fault. A close reading of *McIntosh* indicates that we decided the existence of an open-and-obvious danger went to the issue of duty. Today's case presents us with an opportunity to clarify *McIntosh* and emphasize that the existence of an open and obvious danger does not pertain to the existence of duty. Instead, Section 343A involves a factual determination relating to causation, fault, or breach but simply does not relate to duty. Certainly, at the very least, a land possessor's general duty of care is not eliminated because of the obviousness of the danger.

*Shelton*, 413 S.W.3d at 907. (Footnote omitted).

In *Dick's Sporting Goods, Inc. v. Webb*, 413 S.W.3d 891 (Ky. 2013), the Court again touched on the open and obvious doctrine, but held that the factual circumstances of that particular case did not give rise to an open and obvious danger:

Simply put, the case before us does not present an open-and-obvious hazard. An open-and-obvious condition is found when the danger is known or obvious. The condition is known to a plaintiff when, subjectively, she is aware "not only . . . of the existence of the condition or activity itself, but also appreciate[s] . . . the danger it involves." And the

condition is obvious when, objectively, "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment." It is important to note that Restatement (Second) § 343A does not require both elements to be found. The defendant will not be subject to liability if the condition is either known or obvious.

413 S.W.3d at 895–96. While the mats that Webb stepped on were wet and constituted an open and obvious hazard, when Webb stepped onto tile that she believed to be dry but was not, the danger was not open and obvious anymore, as Webb did not appreciate the danger involved.

In *Carter v. Bullitt Host, LLC*, 471 S.W.3d 288 (Ky. 2015), the Supreme Court clarified the confusion that existed after *McIntosh*. There, Carter, a hotel patron, was injured when he fell on black ice that had accumulated under a carport. In reversing this Court's opinion, the Supreme Court rejected the narrow view adopted by courts after *McIntosh*. The Court specifically overruled *Standard Oil v. Manis*, 433 S.W.2d 856 (Ky. 1968), holding that "all open and obvious hazard cases, including obvious natural outdoor hazard cases, are subject to the comparative fault doctrine." *Carter*, 471 S.W.3d at 295. The Court reasoned:

Supporters of continued applicability of the *Manis* rule might argue that the comparative-fault statute only requires allocation of fault among the parties if a party is actually at fault, and that the oil company in *Manis* and the lodge in *Corbin Motor Lodge* could not be at fault because they had no duty to the plaintiffs. But the legal reason for a no-duty finding—plaintiffs were aware of the danger and thus caused their own injuries by proceeding—is nothing more

than applying a contributory-negligence standard, which is no longer the law of this state.

471 S.W.3d at 296. With regard to a comparative fault analysis in an open and obvious danger situation, the Court held "a land possessor's general duty of ordinary care is not eliminated simply because a hazard is obvious. The question is rather whether the landowner could reasonably foresee a land entrant proceeding in the face of danger, which goes to the question whether the universal duty of reasonable care was breached." *Id.* at 297.

With regard to summary judgments in open and obvious cases, the Court stated:

> The open-and-obvious nature of a hazard is, under comparative fault, no more than a circumstance that the trier of fact can consider in assessing the fault of any party, plaintiff or defendant. *Id.* at 911–12. Under the right circumstances, the plaintiff's conduct in the face of an open-and-obvious hazard may be so clearly the only fault of his injury that summary judgment could be warranted against him, for example when a situation cannot be corrected by any means or when it is beyond dispute that the landowner had done all that was reasonable. *Id.* at 918. Applying comparative fault to open-and-obvious cases does not restrict the ability of the court to exercise sound judgment in these cases any more than in any other kind of tort case.

471 S.W.3d at 297 (citing *Shelton*, 413 S.W.3d 901 (Ky. 2013)). The Court clearly and unequivocally summarized the interplay between comparative fault and open and obvious dangers:

> But under comparative fault, every person has a duty of ordinary care in light of the situation, and that duty applies equally to plaintiffs and defendants. For fault to be placed on either party, a party must have breached his duty; and

if there is a breach, fault must be apportioned based on the extent a party's breach caused or helped cause harm to the plaintiff.

But it is just as true under comparative fault as it has always been that if a landowner has done everything that is reasonable under the circumstances, he has committed no breach, and cannot be held liable to the plaintiff. The difference under comparative fault is that a landowner is not excused from his own reasonable obligations just because a plaintiff has failed to a degree, however slight, in looking out for his own safety. The *Manis* rule, at least as articulated in later cases like *Corbin Motor Lodge*, is the antithesis of this.

. . . .

We have spun our wheels long enough trying to drive open-and-obvious hazard cases the wrong way down a rocky road built on contributory negligence concepts when all the rest of tort law runs smoothly on comparative-fault principles. It is time to clearly say that all torts, as the statute requires, are subject to a comparative fault analysis.

*Carter*, 471 S.W.3d at 298–99.

With regard to the instant case, the trial court granted summary judgment in Patterson's favor, finding that he did not have a duty to warn Resnick of an open and obvious danger. Because the trial court analyzed the case in terms of a duty, its reasoning was not in line with the Supreme Court's requirement that cases be considered in terms of foreseeability and comparative fault. Thus, we vacate the trial court's order granting summary judgment and remand for further consideration of whether or not it was foreseeable to Patterson that Resnick might be on his property helping his mother move, might be distracted while carrying boxes from the storage shed, and might trip on a hole

next to a tree stump. The trial court shall determine whether Patterson did everything he reasonably could under the circumstances and to what extent Resnick is responsible for his injuries.

Accordingly, we vacate the Bullitt Circuit Court's August 15, 2011, entry of summary judgment and remand for proceedings consistent with this opinion, specifically for an analysis of the comparative fault, if any, of both Resnick and Patterson and whether summary judgment was appropriate under the circumstances. *Steelvest v. Scansteel Service Center, Inc.,* 807 S.W.2d 476 (Ky. 1991).

KRAMER, CHIEF JUDGE, CONCURS.

THOMPSON, JUDGE, DISSENTS AND WILL NOT FILE SEPARATE OPINION.