18 S.W.3d 353 (1999)
Shirley MORTON, Individually, and as Executrix of the Estate of James Anthony Morton, Appellant,
v.
BANK OF THE BLUEGRASS AND TRUST COMPANY; Standard Life Insurance Company; Investors Life Insurance Company of North America; Charles H. Jett Insurance Agency, Inc; and Southern Financial Insurance, Appellees.
Standard Life Insurance Company and Investors Life Insurance Company of North America, Cross-Appellants,
v.
Shirley Morton, Individually and as Executrix of the Estate of James Anthony Morton, Cross-Appellee.
v.
Bank of the Bluegrass and Trust Company; and Charles H. Jett Insurance Agency, Inc., Cross-Appellants,
v.
Shirley Morton, Individually, and as Executrix of the Estate of James Anthony Morton, Cross-Appellee.
Nos. 1998-CA-000018-MR, 1998-CA-000120-MR and 1998-CA-000128-MR.
Court of Appeals of Kentucky.
September 3, 1999.
Rehearing Denied December 3, 1999.
Discretionary Review Denied by Supreme Court June 7, 2000.
*354 M. Austin Mehr, Edward A. Baylous, II, Lexington, for Shirley Morton.
*355 Palmer G. Vance, II, Todd S. Page, Lexington, for Southern Financial.
Michael R. Moloney (on brief), John G. Rice (argued), Lexington, for Bank of the Bluegrass and Charles Jett Insurance.
John G. Irvin, Jr., Lexington, for Standard Life Ins. and Investors Life Ins.
Before: BUCKINGHAM, HUDDLESTON, and KNOPF, Judges.

OPINION
BUCKINGHAM, Judge.
This case involves an appeal and two cross-appeals from a judgment and orders of the Fayette Circuit Court which awarded the appellant/cross-appellee, Shirley Morton (Shirley), individually and as executrix of the estate of James Anthony Morton (James), life insurance proceeds but dismissed her claims against the appellees/cross-appellants, Bank of the Bluegrass and Trust Co. (the Bank), Standard Life Insurance Co. (Standard), Investors Life Insurance Co. (Investors), Charles H. Jett Insurance Agency, Inc. (Jett Insurance), and Southern Financial Insurance (Southern)[1], for misrepresentation, bad faith, breach of fiduciary duty, and violation of the Kentucky Consumer Protection Act. After considering the arguments of counsel and reviewing the record and the applicable law, we affirm in part, reverse in part, and remand.
In 1986, Shirley and her husband, James, received a loan from the Bank which was secured by a mortgage on their home. The Mortons obtained a group credit life insurance policy issued by Standard in the amount of the loan from the Bank.[2] James was the insured under the policy, and upon his death, the policy would pay the Bank the remaining amount due on the mortgage with any remaining money to go to Shirley. The mortgage, note, and insurance certificate were issued for the duration of one year and were subsequently reestablished each November.[3]
Southern is the Kentucky general agent for Standard. Southern recruited the Bank and Jett Insurance to serve as soliciting agents for Standard. In 1986, Standard entered into a contract with the Bank whereby the Bank would sell Standard's group credit life insurance to its debtors. Southern trained Bank employees, who were also agents of Jett Insurance, to sell insurance for Standard. Charles Jett III was the owner and president of Jett Insurance as well as chairman of the board for the Bank.
The application which the Bank filled out in order to become a policyholder of group credit life insurance from Standard expressly stated that the policy limited its coverage to insured debtors between the ages of eighteen and sixty-five with a $40,000 maximum level of coverage. The group certificate issued to James from 1986 to 1992 and to Shirley in 1993 included the following language: "ELIGIBILITY: Coverage is limited to eligible debtors of the Creditor who: (1) request the insurance; (2) pay the required premium; and (3) are within the age and amount limits shown in the Policy." Neither the policy nor the group certificate excluded persons with preexisting health conditions, but the group certificate provided for the following condition (the policy contained a similar provision):
DEATH RESULTING FROM PRE-EXISTING CONDITIONIf You or the Joint Insured Debtor die within 6 *356 months (12 months on contracts of more than 3 years) of the Effective Date shown above as a result of a pre-existing illness, disease, or physical condition for which You or the Joint Insured Debtor received medical advice, consultation or treatment during the 12 month period immediately preceding the Effective Date of Your coverage. Our liability shall be limited to the premiums paid for the coverage.
Standard alleged that it had a rule, communicated through Southern to the Bank and Jett Insurance, that policies should only be issued to debtors who "appeared to be of sound health." The only written documentation of this rule was in the agency agreement between Standard and Jett which stated that "[t]he Agent shall solicit Life Insurance from debtors appearing to be in sound health...."
During the spring of 1993, James Morton was diagnosed with cancer. When a new note and mortgage were put in place in November of that year, the Bank refused to issue another group credit life insurance certificate in James's name due to his illness. Rather, the Bank issued the certificate in Shirley's name after the Mortons paid the premium. James died in June 1994, approximately seven months after the certificate was issued, and no death benefits were paid by Standard. Shirley thereafter filed suit individually and as executrix of the estate of James, and the complaint and amended complaint alleged misrepresentation, bad faith, breach of fiduciary duty, violation of the Kentucky Consumer Protection Act, and violation of the Kentucky Insurance Fraud Act, by the Bank, Standard, Investors, Jett Insurance, and Southern.
Summary judgment motions were filed by all parties, and the trial court granted summary judgment in favor of Shirley based on "the Plaintiff's [Morton's] lack of notice that ill health was a ground for denying issuance of the policy." The trial court issued a second order which reformed, on equitable grounds, the group life insurance certificate to name James as the insured debtor. The order directed that the insurance proceeds be paid to the Bank to the extent necessary to pay the balance of the Mortons' note, with any remaining funds to be paid to Shirley. The trial court's orders also dismissed Shirley's claims of misrepresentation, bad faith, breach of fiduciary duty, violation of the Kentucky Consumer Protection Act, and violation of the Kentucky Insurance Fraud Act. After all orders and judgments became final and appealable, Shirley appealed and the Bank, Jett Insurance, and Standard cross-appealed.
The parties disagree concerning which subtitle of the Kentucky Insurance Code (KRS Chapter 304) governs the group credit life insurance policy issued by Standard to the Bank in this case. Shirley contends that both Subtitle 16 and Subtitle 19 apply, and the appellees/cross-appellants contend that only Subtitle 19 is applicable. Subtitle 16 relates to group life insurance, whereas Subtitle 19 relates to credit life insurance and credit health insurance. It is clear that Subtitle 19 applies, as KRS 304.19-010 provides that "[a]ll life insurance and all health insurance in connection with loans or other credit transactions shall be subject to the provisions of this subtitle...." Since Subtitle 19 clearly applies to this case, Standard, Jett Insurance, and the Bank rely upon KRS 304.19-080(3)(b)(2) which states that credit life insurance "shall be offered" to debtors who meet the applicable age limits "provided that each company's right to underwrite risks on an individual basis shall not be restricted by this subparagraph." Thus, they argue that they were not required to issue James a policy because of their right to underwrite risks on an individual basis.
Shirley agrees that Subtitle 19 is applicable to the policy. However, she asserts that Subtitle 16 (Group Life Insurance) is also applicable. KRS 304.16-040 provides in relevant part that

*357 [t]he lives of a group of individuals may be insured under a policy issued to a creditor,... which creditors ... shall be deemed the policyholder[s], to insure debtors of the creditor subject to the following requirements:
(1) The debtors eligible for insurance under the policy shall be all of the debtors of the creditor or creditors whose indebtedness is repayable either (a) in installments or (b) in one (1) sum at the end of a period not in excess of eighteen (18) months from the initial date of death...."
Shirley then relies on KRS 304.16-150 which provides "[t]here shall be a provision setting forth the conditions, if any, under which the insurer reserves the right to require a person eligible for insurance to furnish evidence of individual insurability satisfactory to the insurer as a condition to part or all of his coverage." See also KRS 304.16-110. It is undisputed that neither the application for insurance made available by the Bank to its eligible debtors nor the group credit life insurance policy itself contained a provision specifying that insurance could be denied for medical reasons. Therefore, Shirley argues that under KRS 304.16-150, the Bank had no right to deny James the insurance.
The trial court found that Subtitle 16 was not applicable to the policy. The basis of the trial court's holding was its belief that Subtitle 19 applied as it "specifically relates to credit life insurance, and the Court is obligated to rely on the specific rather than the general." We conclude that both Subtitle 16 and Subtitle 19 apply in this case by virtue of KRS 304.5-010, a statute which was not mentioned by either the parties or the trial court, which provides as follows:
It is intended that certain insurance coverages may come within the definitions of two (2) or more kinds of insurance as defined in this chapter, and the inclusion of such coverage within one (1) definition shall not exclude it as to any other kind of insurance within the definition of which such coverage is likewise reasonably includable.
"Credit life insurance" is defined in KRS 304.19-020(1) as "insurance on the life of a debtor pursuant to or in connection with a specific loan or other credit transaction[.]" Obviously, the insurance in the case sub judice falls within this definition. However, the insurance is also "reasonably includable" within the aforementioned definition of debtor group life insurance found in KRS 304.16-040.
The appellees/cross-appellants argue that the trial court was correct in concluding that Subtitle 19 and not Subtitle 16 was applicable based on its determination that "the specific rather than the general" controls. The appellees/cross-appellants rely on KRS 304.1-130 which states that "[p]rovisions of this code relative to a particular kind of insurance or a particular type of insurer or to a particular matter shall prevail over provisions relating to insurance in general or insurers in general or to such matter in general." Having examined and compared the provisions of Subtitle 19 and Subtitle 16, we see no ambiguity. Subtitle 19 provides that an insurer issuing credit life insurance to debtors may underwrite risks on an individual basis. KRS 304.19-080(3)(b)(2). Subtitle 16 provides that an insurer issuing group life insurance to debtors may likewise underwrite risks on an individual basis if the insurer reserves that right by setting forth the conditions in the policy. KRS 304.16-150. In fact, the provisions of Subtitle 16 appear to be more specific than those of Subtitle 19.
Therefore, we conclude that James was wrongfully denied coverage, as both Subtitle 19 and Subtitle 16 were applicable and as there was no provision in either the insurance policy or the application which indicated that insurance could be denied for medical reasons. The cross-appeals are without merit, and the trial court is *358 affirmed on this issue.[4]
Although Shirley received the insurance proceeds as compensatory damages, she contends that the trial court erred in granting summary judgment to the appellees/cross-appellants and in dismissing her additional causes of action of misrepresentation, bad faith, breach of fiduciary duty, and violation of the Kentucky Consumer Protection Act.[5] The standard for summary judgment is as follows:
A movant should not succeed in a motion for summary judgment unless the right to judgment is shown with such clarity that there is no room left for controversy and it appears impossible for a nonmoving party to produce evidence at trial warranting judgment in his favor.... The motion for summary judgment must convince the circuit court from evidence in the record of the nonexistence of a genuine issue of material fact.
Hubble v. Johnson, Ky., 841 S.W.2d 169, 171 (1992). An appellate court's task when a trial court has granted summary judgment is to determine "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." Scifres v. Kraft, Ky.App., 916 S.W.2d 779, 781 (1996). As factual findings are not at issue, the trial court's ruling is entitled to no deference. Id.
The basis of the trial court's orders granting summary judgment in favor of the appellees/cross-appellants on Shirley's claims for damages for misrepresentation, bad faith, breach of fiduciary duty, and violation of the Kentucky Consumer Protection Act was the trial court's opinion that the "insurers are permitted under KRS 304.19-080(3)(b)(2) to underwrite on an individual basis" and, therefore, that the insurers were acting legally in refusing to issue a group life insurance certificate to James, even though a judgment for the proceeds was granted on equitable grounds. As this relates to Shirley's claim of misrepresentation, the trial court stated that it "does not believe that any facts exist indicating a misrepresentation by any of the Defendants." However, as we have stated above, the appellees/cross-appellants had no legal right to deny James coverage under the policy due to the applicability of the provisions of KRS 304.16-150.
Shirley's complaint alleged negligent or intentional misrepresentation (i.e., fraud) for which she claims entitlement to both compensatory and punitive damages. To the extent that the complaint asserts a cause of action for negligent misrepresentation, summary judgment in favor of the appellees/cross-appellants was appropriate, as only compensatory damages are allowed for this claim.[6]See KRS 411.184 (permitting punitive damages to be awarded only for intentional actions such as fraud, oppression, or malice).
We conclude, however, that the trial court erred in dismissing Shirley's intentional misrepresentation (fraud) claim. Viewing the evidence in a light most favorable to Shirley, there is evidence of the following: (1) that James was eligible for and entitled to coverage under the group credit life insurance policy; (2) that the loan officer, on behalf of Standard, Jett Insurance, and the Bank, represented to James and Shirley that James was no *359 longer eligible under the policy; (3) that this representation was false and was known to be false by Standard, Jett Insurance, and the Bank;[7] (4) that the misrepresentation was made for the purpose of inducing James and Shirley to forego coverage for James; (5) that James and Shirley acted in reliance on the misrepresentation; and (6) that the misrepresentation caused James and Shirley to suffer damages by not having death benefit coverage for James in effect at his death. See Investors Heritage Life Ins. Co. v. Colson, Ky.App., 717 S.W.2d 840, 842 (1986), for a recitation of the factors necessary to sustain a fraud action. In short, the trial court erred in granting summary judgment on Shirley's intentional misrepresentation claim against Standard, Jett Insurance, and the Bank, as there were genuine issues of material fact and the appellees/cross-appellants were not entitled to judgment as a matter of law.[8]
We likewise conclude that the trial court erred in granting summary judgment to the Bank on Shirley's claim of breach of fiduciary duty. A fiduciary relationship "is one founded on trust or confidence reposed by one person in the integrity and fidelity of another and which also necessarily involves an undertaking in which a duty is created in one person to act primarily for another's benefit in matters connected with such undertaking." Steelvest, Inc. v. Scansteel Service Ctr., Inc., Ky., 807 S.W.2d 476, 485 (1991). Although a bank is not traditionally held to be in a fiduciary relationship with its depositors, "services to borrowers and pledgors may support a finding that a bank, in taking a borrower's note and collateral, falls under a fiduciary duty to disclose material facts affecting the loan transaction." Id.
We hold that (1) the bank's loan officer, who was also an employee of Jett Insurance, had a fiduciary duty to disclose "material facts affecting the loan transaction" such as eligibility for credit life insurance to the Mortons; and (2) that genuine issues of material fact exist relative to whether the loan officer breached that fiduciary duty in advising the Mortons concerning James's eligibility for coverage. While summary judgment in favor of Southern, Jett Insurance, and Standard was appropriate on Shirley's breach of fiduciary duty claim, it was not appropriate as to the Bank.
Shirley also asserts that the trial court erred in granting summary judgment against her on her bad faith claim. This court set forth the elements of a bad faith claim in Empire Fire & Marine Ins. Co. v. Simpsonville Wrecker Service, Inc., Ky.App., 880 S.W.2d 886 (1994), as follows:
In order to maintain a private cause of action for tortious misconduct justifying a claim of bad faith, an insured must prove (1) that the insurer was obligated to pay, (2) that the insurer lacked "a reasonable basis in law or fact for denying the claim," and (3) that the "insurer either knew there was no reasonable basis for denying the claim or acted with *360 reckless disregard for whether such a basis existed."
Id. at 888, quoting Wittmer v. Jones, Ky., 864 S.W.2d 885, 890 (1993). Shirley's allegation of bad faith is a result of James being denied insurance and not a result of the denial of a claim. We thus conclude that the trial court correctly granted summary judgment on this issue.
Shirley next asserts that the trial court erred in dismissing her claim for violation of the Kentucky Consumer Protection Act. KRS 367.220(1) provides that a person may bring an action for violation of the Kentucky Consumer Protection Act if the person "purchases or leases goods or services primarily for personal, family or household purposes...." It has been held that purchasing an insurance policy is a service within the meaning of the Act. Stevens v. Motorists Mut. Ins. Co., Ky., 759 S.W.2d 819, 820 (1988) (holding that "[t]he Kentucky Consumer Protection Act ... does provide a homeowner with a remedy for the conduct of their own insurance company in denying such a claim because the act has provided a `statutory' bad faith cause of action").
As the Kentucky Consumer Protection Act "has the broadest application in order to give Kentucky consumers the broadest possible protection for allegedly illegal acts[,]" and as "KRS 446.080 requires that the statutes of this Commonwealth are to be liberally construed[,]" id. at 821, we hold that the Act is applicable to the case sub judice. Furthermore, there are fact issues regarding whether the appellees/cross-appellants committed false, misleading, or deceptive acts in violation of KRS 367.170(1) in representing to the Mortons that James was not eligible for or entitled to coverage. The trial court erred in dismissing this cause of action.[9]
Shirley next contends that the trial court erred in not imposing sanctions on Southern for destroying documents on the day of a deposition in which those documents were requested and which were subsequently ordered to be produced. Sanctions of this type are governed by Kentucky Rule of Civil Procedure (CR) 37.02 and are within the trial court's discretion. See e.g. M.P.S. v. Cabinet for Human Resources, Ky.App., 979 S.W.2d 114, 118 (1998). The trial court was in the best position to determine if Southern's conduct warranted the imposition of sanctions. We conclude that the trial court did not abuse its discretion in not sanctioning Southern and affirm the trial court on this issue.
Shirley also argues that the trial court erred in not allowing Shirley to depose Standard's current in-house general counsel and its former assistant in-house counsel. Standard objected to the taking of the depositions of those attorneys on the ground of the attorney-client privilege of Kentucky Rule of Evidence (KRE) 503, and the trial court entered a protective order prohibiting the taking of depositions. Shirley asserts that she sought to take the depositions in question to further her fraud claim.
Citing Cummings v. Commonwealth, 221 Ky. 301, 298 S.W. 943 (1927), the Kentucky Supreme Court held in Steelvest, supra, that "[t]he [attorney-client] privilege is generally considered to be absolute as to communications made by or to a person advising with an attorney as to past transactions and offenses. [Citation Omitted.] However, the rule does not apply to future transactions when the person seeking the advice is contemplating the committing of a crime or the perpetration of a fraud." Steelvest, supra, at 487. As "[t]he privilege of the [attorney-client] relationship is an obstacle to the fact finding process and is to be strictly confined within the narrowest possible limits consistent with the logic of its principle[,]" see Futrell v. Shadoan, Ky., 828 S.W.2d 649, 651 (1992), we conclude that the trial court *361 erred in denying Shirley the right to depose the attorneys for Standard. She has the right to depose the attorneys concerning their knowledge as to any underwriting rule, their knowledge of any plan by Standard to perpetrate a fraud on the Mortons, and any other similar and relevant matter not subject to the attorney-client privilege.
Shirley next asserts that the trial court erred in denying her motion to file a second amended complaint to allow additional theories of liability, including tortious interference with prospective contractual relations. This motion to file a second amended complaint was filed over two years after the original complaint was filed and over one year after the amended complaint was filed. The trial court had previously entered an order denying Shirley's motion to file a second amended complaint asserting a cause of action for spoliation of evidence, but there is no indication that the trial court ever ruled on Shirley's motion to amend her complaint to assert a cause of action based upon tortious interference with contractual relations. Thus, this court is without the authority to rule on this issue. Regional Jail Auth. v. Tackett, Ky., 770 S.W.2d 225, 228 (1989).
Finally, Shirley argues that the trial court improperly resolved her request for prejudgment interest. The trial court awarded her "the amount of interest paid by ... [Shirley] to the Bank of the Bluegrass on the mortgage note secured by the Linwall Road residence from June 10, 1997 [sic], the date of the death of Mr. James Anthony Morton, to the date of entry of this judgment." She contends that the trial court improperly awarded her interest at eight percent per annum rather than the twelve percent rate found in 806 KAR 12:092, § 3(4). However, as noted by Standard, Shirley may not utilize that regulation as its "sole purpose ... is to provide guidance to the commissioner [of the Kentucky Department of Insurance] and his designees in their investigations, examinations, and administrative adjudications and appeals therefrom." 806 KAR 12:092, § 2(2). Furthermore, that regulation is meant to provide a penalty for insurers who deny a good faith attempt to settle a claim.
In the case sub judice, no claim for insurance was filed. Also, Shirley's reliance on KRS 304.12-235 is misplaced, as that statute also deals only with payment of claims. In short, Shirley cites no authority which would entitle her to prejudgment interest at the higher rate.
The judgment and orders of the Fayette Circuit Court are affirmed in part and are reversed in part and remanded for further proceedings consistent with this opinion.
ALL CONCUR.
NOTES
[1] Southern did not file a cross-appeal, but we will nevertheless refer to all appellees as "appellees/cross-appellants" for the sake of simplicity.
[2] Standard was acquired by Investors by merger, and Standard and Investors are treated as one entity for purposes of this case.
[3] Both the trial court and Shirley state that the insurance certificate was "renewed" each year, but a new policy was actually issued each year. The same procedure was used for the note and mortgage.
[4] The trial court reformed the insurance group certificate to list James as an insured on equitable grounds. However, because this issue can be resolved on legal grounds, equitable principles are inapplicable as equity follows the law. See e.g. Kaufman v. Kaufman's Adm'r, 292 Ky. 351, 166 S.W.2d 860, 867 (1942).
[5] As Shirley's brief does not raise the issue of the trial court's dismissal of her claim of violation of the Kentucky Insurance Fraud Act, we assume that she does not appeal from that portion of the trial court's orders.
[6] Shirley's judgment for the insurance proceeds constitutes an award of compensatory damages.
[7] The appellees/cross-appellants contend that they were allowed to underwrite on an individual basis pursuant to KRS 304.19-080(3)(b)(2), but we have previously herein rejected that argument. The appellees/cross-appellants also claim that they were acting pursuant to company underwriting rules, but there is no written evidence of any such rules. There is a fact issue as to whether such rules existed. Even if such rules existed, they were contrary to law because the policy did not contain a provision whereby the insurer was reserving the right to require evidence of individual insurability. KRS 304.16-150. There is a fact issue as to whether the appellees/cross-appellants knew that such rules, if they existed, were contrary to law and whether the appellees/cross-appellants nevertheless made representations to the Mortons which they knew were false.
[8] As the undisputed evidence was that Southern merely followed the directions of Standard in advising the Bank and Jett Insurance relative to underwriting on an individual basis based on health, we conclude that Southern was entitled to summary judgment on Shirley's intentional misrepresentation claim.
[9] Summary judgment in favor of Southern was appropriate as to this cause of action but was not appropriate as to Standard, Jett Insurance, and the Bank.