**Sherry G. MCCOY, Appellant**

v.

**FAMILY DOLLAR STORE OF KENTUCKY, LTD.; R & J Development Company, LLC, Appellees**

**NO. 2015–CA–000926–MR**

Court of Appeals of Kentucky.

JANUARY 6, 2017

Discretionary Review Denied by Supreme Court August 16, 2017

**BRIEFS FOR APPELLANT:** Kyle R. Salyer, Louisville, Kentucky

BRIEF FOR APPELLEE, FAMILY DOLLAR STORE OF KENTUCKY, LTD.: Kimberly Van Der Heiden, Carlisle, Kentucky

BRIEF FOR APPELLEE, R & J DEVELOPMENT COMPANY, LLC: Jeffrey A. Taylor, Kyle W. Ray, Lexington, Kentucky

BEFORE: ACREE, J. LAMBERT, AND THOMPSON, JUDGES.

## OPINION

J. LAMBERT, JUDGE:

Sherry McCoy has appealed from the summary judgment of the Martin Circuit Court dismissing her premises liability case against Family Dollar Store of Kentucky, LTD, (Family Dollar) and R & J Development Company, LLC, (R & J) as well as from the order denying her motion to alter, amend, or vacate that order. Finding no error, we affirm.

McCoy filed a complaint on May 13, 2014, seeking $1,312,327.46 damages from Family Dollar and R & J for injuries she sustained when she tripped on a wheel stop and fell in the parking lot of the Family Dollar store in Inez, Kentucky. She alleged that she was an invitee when she fell near the front entrance and that Family Dollar or R & J had breached its duty to maintain the walkway surfaces in a safe manner and therefore caused her to be injured. She requested compensatory and punitive damages. Both Family Dollar and R & J filed answers stating that the complaint failed to state a cause of action and should be dismissed. A jury trial was scheduled for June 2015.

Prior to the trial date, McCoy filed a Rule 26 disclosure for her expert witness, John B. Schroering, who is a professional engineer. He was expected to testify about his site visit and inspection of the parking lot, specifically about wheel stops, and McCoy summarized his opinions. McCoy's

witness list indicated that Mr. Schroering's report was attached, but that document was not included with the witness list.

McCoy testified by deposition on February 10, 2015.[1] She stated that she had shopped at the Family Dollar in Inez around four times prior to the November 21, 2013, incident. She remembered that it was cold that day but there was not any precipitation. She was wearing tennis shoes. She parked at the front of the store, one or two spaces to the right of the front door, and she said there was a sidewalk between the parking lot and the store. She could not pull directly up to the sidewalk because there were big red poles blocking her from doing so. She said there was also a wheel stop at the front of the parking space. She did not know how tall it was or whether it was painted. There was a space between the wheel stop and the sidewalk, but she did not know how big that space was. She did not notice the wheel stop that day until she fell.

The day of the incident, McCoy was driving her husband's Dodge Dakota truck. Upon her arrival at Family Dollar, she parked, got out of the truck, walked to the sidewalk, and proceeded into the store to shop, where she used a shopping cart. After she completed her shopping, McCoy pushed the cart out of the store and placed it next to the red poles. She opened the passenger side door of the truck and placed her purse and one bag inside. She went back to get her other purchases and discovered that the cart had slid away from the red pole where she had left it.

She had to step up onto the sidewalk. She reached into the cart to retrieve her purchases, turned around, stepped back down, hit her foot against the wheel stop, and fell on her face. She said that there was open space between her vehicle and the next one and that there was enough space between the wheel stop and the sidewalk for her to place her foot. McCoy later testified that she was looking straight ahead towards the parking lot when she stepped off the sidewalk and that nothing was distracting her. She said the wheel stop caused her to fall, not any debris or anything slick on the pavement. She denied seeing the wheel stop.

On April 27, 2015, Family Dollar filed a motion for summary judgment seeking dismissal of McCoy's complaint. Family Dollar attached a copy of the lease between it and R & J, which was entered into February 24, 2012. The lease provided that R & J constructed both the building and parking lot that were rented to Family Dollar as a tenant. Pursuant to the terms of the lease, R & J, as the landlord, had the responsibility to maintain and keep in good repair the exterior areas of the store. This included the parking, service, and access areas, but did not include snow, ice, trash, weeds, and debris removal. Family Dollar was responsible for the interior of the building.

Family Dollar cited to the deposition testimony of Brandon Doerner, the Real Estate Director for R & J.[2] Mr. Doerner testified that the wheel stops were placed

1.  The record only contains a partial transcript of McCoy's deposition.

2.  The transcript of Mr. Doerner's deposition is not included in the certified record on appeal, although his affidavit was attached to R & J's separate motion for summary judgment. In the April 8, 2015, affidavit, Mr. Doerner stated that "[t]he parking barrier/wheel curb on which Sherry McCoy stepped and fell is colored black and yellow" and that "[t]he parking barrier/wheel curb has remained unchanged since the Family Dollar store opened in October 2012[.]" We shall rely upon his affidavit as well as the summary of his testimony as contained in Family Dollar's memorandum for purposes of our recitation of the facts.

in the parking lot during construction. They were bolted into the asphalt and had reflective yellow striping. He stated that there was room between the wheel stops and the ingress and egress areas for pedestrians to be between their cars and the entrance of the store. Mr. Doerner inspected the wheel stops after McCoy's fall, and he took photographs that were provided in discovery. He stated that the wheel stops had been approved in the construction process and had passed inspection. Family Dollar argued that it had not breached any duty to McCoy and therefore could not be held liable for her injury in the parking lot. McCoy objected to Family Dollar's motion and argued that a factual issue existed as to which entity placed the wheel stop in the parking lot.

R & J filed a separate motion for summary judgment on April 29, 2015. R & J pointed to Mr. Doerner's affidavit for the factual assertions that the wheel stop was painted black and yellow and had not changed since the Family Dollar opened in October 2012. R & J further relied upon McCoy's deposition testimony that she was not distracted when she fell, that there was no precipitation, debris, or slippery substance that contributed to her fall, and she was not looking down when she stepped off of the sidewalk. R & J argued that the wheel stop was not a dangerous condition, that it was open and obvious, and that it did not owe or breach a duty to McCoy.

The circuit court held oral arguments and entered a summary judgment on May 13, 2015, in favor of both Family Dollar and R & J, and dismissed McCoy's complaint. After considering the applicable cases, including *Kentucky River Medical Center v. McIntosh*, 319 S.W.3d 385 (Ky. 2010), *Dick's Sporting Goods, Inc. v. Webb*, 413 S.W.3d 891 (Ky. 2013), and *Shelton v. Kentucky Easter Seals Society, Inc.*, 413

S.W.3d 901 (Ky. 2013), the court concluded as follows:

The Court's first duty, however, is to determine the duty owed to the business invitee. In the case at bar, the wheel stop was in its intended location, and was not damaged or defective in anyway [sic]. The Court takes judicial notice that there are wheel stops located at innumerable businesses throughout the Commonwealth of Kentucky. The Plaintiff in this case was not distracted by any emergency situation nor was she distracted by a conversation with any other person, nor was she faced with a situation where the wheel stop was partially hidden or concealed. As the Court noted in *Shelton*, an open and obvious danger may not create an unreasonable risk and gave examples of a small pothole in a parking lot, steep stairs leading to a business, or a simple curb. Bearing all these factors in mind, the Court concludes as a matter of law that the wheel stop did not constitute an unreasonably dangerous condition so as to require the owner to eliminate or warn of it. Since there was no unreasonably dangerous condition, no further duty was imposed upon the Defendants, and they are entitled to summary judgment as a matter of law.

McCoy moved the court to alter, amend, or vacate its decision, arguing that the court ignored her liability expert, Mr. Schroering. She stated that the court failed to discuss (or impermissibly weighed and disagreed with) Mr. Schroering's opinions that the defendants had placed an unsafe trip hazard in front of the store and that she would not have been injured had the hazard not been there. The circuit court denied McCoy's motion, and this appeal follows.

On appeal, McCoy contends that the circuit court erred in granting the motions

for summary judgment and failed to consider her expert witness's testimony. Both Family Dollar and R & J argue that the circuit court properly dismissed the complaint.

■ First, we shall consider McCoy's argument that the circuit court should have considered the expert testimony of Mr. Schroering in its decision. She argues that his opinion and ASTM F 1637[3] created a factual issue regarding alleged negligence on the parts of Family Dollar and R & J. The only mention of Mr. Schroering's expert opinion appeared in summary form in McCoy's Rule 26 Disclosure and her Witness List. However, neither his report nor ASTM F 1637 was attached to either filing or otherwise included in the record on appeal. Furthermore, as Family Dollar pointed out in its brief, McCoy failed to seek additional time to obtain Mr. Schroering's testimony or to file an affidavit or his report into the record. Therefore, Mr. Schroering's opinion was not before either the circuit court or this Court for review, and therefore it cannot form the basis for an argument that a factual issue remains to be decided. *See Smith v. Bethlehem Sand & Gravel Co., LLC*, 342 S.W.3d 288, 294 (Ky. Ct. App. 2011) ("[I]t is well established that a party responding to a properly supported summary judgment motion cannot merely rest on the allegations in his pleadings, but must, by counter-affidavit or otherwise, show that evidence is available justifying trial of the issue involved."). Accordingly, McCoy's argument that the circuit court failed to consider, or improperly rejected, Mr. Schroering's expert opinion must fail.

Next, we shall consider whether the circuit court properly entered a summary judgment as a matter of law. Our standard of review in an appeal from a summary judgment is well-settled in the Commonwealth. "The standard of review on appeal when a trial court grants a motion for summary judgment is 'whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law.'" *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001), *quoting Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996); *Palmer v. International Ass'n of Machinists & Aerospace Workers*, 882 S.W.2d 117, 120 (Ky. 1994); CR 56.03. "Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo*." *Lewis*, 56 S.W.3d at 436, citing *Scifres*, 916 S.W.2d at 781; *Estate of Wheeler v. Veal Realtors and Auctioneers, Inc.*, 997 S.W.2d 497, 498 (Ky. App. 1999); *Morton v. Bank of the Bluegrass and Trust Co.*, 18 S.W.3d 353, 358 (Ky. App. 1999). With this standard in mind, we shall review the circuit court's summary judgment.

In *Shelton, supra*, and *Webb, supra*, the Supreme Court of Kentucky extensively addressed the law controlling premises liability and clarified its prior holding in *McIntosh, supra*. The Court specifically discussed situations where a condition is open and obvious.

In *Webb*, the Court addressed a situation where the condition was not open or obvious and utilized general negligence principles in its analysis.

Generally speaking, a landowner is not exempt from the overarching duty of reasonable care that pervades our negli-

---

**3.** McCoy attached to her brief a copy of ASTM International's standard practice for safe walking surfaces, F 1637–07, which is "intended to provide reasonably safe walking surfaces for pedestrians wearing ordinary footwear."

gence law. "The concept of liability for negligence expresses a universal duty owed by all to all." And "every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury." "A customer of a store, when on that part of the premises where customers are expected to go, is an invitee." More specifically with regard to the invitees, we have routinely held that "landowners owe a duty to invitees to discover unreasonably dangerous conditions on the land and either correct them or warn of them." Of course, possessors are not required to ensure the safety of individuals invited onto their land; but possessors of land are required to maintain the premises in a reasonably safe condition.

As *McIntosh* makes clear, Dick's Sporting Goods, as a possessor of land, has a duty to maintain reasonably safe premises for its patrons. This duty involves the responsibility to "discover unreasonably dangerous conditions on the land and either correct them or warn of them." ... But when the condition is neither *known* nor *obvious* to the invitee, as previously determined, the full weight of the duty to maintain reasonably safe premises remains. Accordingly, with no *known* or *obvious* danger present, a landowner owes a duty of reasonable care to those individuals invited onto the landowner's property, and the landowner must inform invitees of or eliminate any unreasonable dangers that would otherwise be undetected.

*Webb*, 413 S.W.3d at 897–98 (emphasis in original, footnotes omitted). In that case, the Court remanded for a factual determination of whether Dick's Sporting Goods breached its duty by failing to maintain its premises in a reasonably safe condition. *Id.* at 899.

In *Shelton*, on the other hand, the Court addressed open and obvious conditions, which it defined as follows:

An open and obvious condition is one in which the danger is known or obvious. The plaintiff knows of a condition when she is aware, "not only ... of the existence of the condition or activity itself, but also appreciate[s] ... the danger it involves." And the condition is obvious when "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment."

*Id.* at 906 (footnotes omitted). Clarifying *McIntosh*, the Court held:

We alter the analysis performed in this and future cases of this sort such that a court no longer makes a no-duty determination but, rather, makes a no-breach determination, dismissing a claim on summary judgment or directed verdict when there is no negligence as a matter of law, the plaintiff having failed to show a breach of the applicable duty of care. This approach places the reasonable-foreseeability analysis where it belongs—in the hands of the fact-finders, the jury. This approach continues Kentucky's, along with a growing number of states', slow, yet steady, progress to modernize our tort law and eliminate unfair obstacles to the presentation of legitimate claims. And this approach brings transparency and consistency to the decision-making and reasoning of Kentucky's judges.

*Shelton*, 413 S.W.3d at 904.

The Court shifted "the focus away from duty to the question of whether the defendant has fulfilled the relevant standard of care." *Id.* at 910. Explaining the application of Restatement (Second) of Torts Section 343A, the Court held: "Section 343A suspends liability when the dan-

ger is known or obvious to the invitee, *unless* the invitor should anticipate or foresee harm resulting from the condition despite its obviousness or despite the invitee's knowledge of the condition." *Id.* at 911 (emphasis in original). If a landowner has fulfilled its duty of care, only then will it be shielded from liability for an open and obvious condition: "No liability is imposed when the defendant is deemed to have acted reasonably under the given circumstances." *Id.* After noting that a landowner has a duty to an invitee to either eliminate or warn of unreasonable risks of harm, the Court explained:

> An unreasonable risk is one that is "recognized by a reasonable person in similar circumstances as a risk that should be avoided or minimized" or one that is "in fact recognized as such by the particular defendant." .... But when a condition creates an unreasonable risk, that is when a defendant "should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger[,]" liability may be imposed on the defendant as a breach of the requisite duty to the invitee depending on the circumstances.

*Id.* at 914 (footnotes omitted). The Court remanded the case for a factual determination of whether the property owner breached its duty to Shelton.

McCoy also cited to the more recent opinion of *Carter v. Bullitt Host, LLC*, 471 S.W.3d 288 (Ky. 2015), another premises liability case in which the Supreme Court addressed the maintenance of a hotel entryway during or soon after a snow storm. Among other holdings, McCoy relies upon *Carter* to assert that her case should be permitted to go before a jury:

> [O]ur Court has already, very recently, addressed whether the openness and obviousness of a danger can be a complete defense in the face of modern tort law in *Shelton v. Kentucky Easter Seals Society, Inc.*, 413 S.W.3d 901 (Ky. 2013). *Shelton* specifically answered questions about duty and breach, and held that while considerations of the obviousness of a hazard often were traditionally deemed to go to the existence of a duty, such considerations were better addressed in deciding whether the defendant breached the almost universally accepted general duty of ordinary care owed by every person to all other persons. Instead of killing a case prematurely because of the obvious nature of a hazard, most non-frivolous cases will now be allowed to mature fully and go before a jury to determine whether there has been tortious conduct at all and, if so, to apportion fault among the parties.

*Carter*, 471 S.W.3d at 296–97.

McCoy contends that proof existed at the time the circuit court granted summary judgment that neither Family Dollar nor R & J had corrected a correctable situation and had not acted reasonably, and therefore caused needless danger to her. This proof was the evidence from McCoy's expert witness, Mr. Schroering. We have already addressed this issue above and held that this evidence was not before the circuit court.

■ We agree with Family Dollar and R & J that the circuit court properly held that their duty of care was not breached by the presence of the wheel stop in the parking lot. The wheel stop was not defective or damaged, and it did not create an unreasonably dangerous condition necessitating the need to warn any invitees about, or correct, the condition. There was no evidence in the record that wheel stops were unreasonably dangerous, and McCoy failed to place into evidence any testimony, an affidavit, or even a report establishing

this assertion. Accordingly, no duty arose on the part of either Family Dollar[4] or R & J to warn McCoy or to correct the condition, and there is no evidence that the injury McCoy sustained was foreseeable. Additionally, McCoy testified that she was not distracted and that there was nothing slick or any debris in the parking lot. Therefore, the circuit court did not commit any error as a matter of law in granting summary judgment and dismissing McCoy's complaint.

For the foregoing reasons, the circuit court's summary judgment and order denying the motion to alter, amend, or vacate is affirmed.

ALL CONCUR.

---

4. As an aside, it appears that the lease between Family Dollar and R & J would preclude liability on the part of Family Dollar because R & J, as the landlord, had the responsibility to keep the parking lot maintained and in good repair.