NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  18a0058n.06

No. 17-5775

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| SANDRA DUNN, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | Feb 01, 2018 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Eastern District |
| WAL-MART STORES EAST, LIMITED | ) | of Kentucky |
| PARTNERSHIP, | ) | |
| | ) | |
| Defendant-Appellee. | | |

_____/

**Before:  GUY, GIBBONS, and COOK, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge**.   Sandra Dunn appeals the order granting summary judgment to Wal-Mart Stores East with respect to her state-law negligence claim for injuries sustained when she fell on the sidewalk outside a Wal-Mart store.  Because reasonable minds could differ about whether Dunn tripped on an uneven sidewalk (as she testified) or tripped on her own feet (as Wal-Mart contends), and because the district court relied on concepts of obviousness and contributory fault that are inconsistent with recent developments in Kentucky premises liability law, we reverse and remand for further proceedings.

**I.**

Sandra Dunn was familiar with the Wal-Mart store in Cannonsburg, Kentucky, because she had worked there at one time and continued to shop there regularly.  At around 3:00 p.m. on

a clear dry day in October 2014, Dunn went to the store to return a car battery charger that she and her husband had purchased there the day before. A surveillance camera captured Dunn parking her car in the row of spaces located directly behind the three-bay auto service area in the rear of the store. Dunn got out of her car, removed the battery charger from the trunk, and turned toward the store. Dunn paused briefly as another car exited the nearest service bay door, and then resumed walking toward the building after the driver waved her forward. The video shows that Dunn walked about a dozen steps from that point—crossing the asphalt and taking a couple of steps on the concrete sidewalk—before she tripped and fell.

Dunn testified that she was not looking down when she fell, but said she felt her left foot "catch" on something that caused her to trip. While still on the ground, Dunn looked back at the sidewalk and saw uneven concrete "sticking up" about a half inch to an inch. Dunn told Michael Marshall, an auto technician who approached her, that she had tripped on the concrete "where it is a little higher on one side of the concrete." A few minutes later, Dunn wrote in an incident report that she fell when "concrete filled in not level and caught my left foot." Dunn repeated her claim when she was interviewed under oath six days later. Dunn testified that she injured her left knee in the fall, and had not recovered despite undergoing knee surgery.

Michelle Laney, the Wal-Mart manager who signed the incident report, testified that she did not see Dunn fall. Although Laney was familiar with the area because she frequently went outside to smoke, she said she had not noticed any cracks or uneven surfaces in the sidewalk. Also, it was Laney's opinion that the video showed Dunn tripping on her own feet. Michael Marshall testified that he also did not see Dunn fall, but he said he was aware of an uneven "crack" in the sidewalk in the area where Dunn fell. After reviewing the video, however, Marshall said he believed the uneven place in the sidewalk crack was closer to the corner of the

building than where Dunn fell. Marshall added that he thought the expansion joint in the sidewalk was level at the spot where Dunn appeared to have tripped.

Some photographs taken by Wal-Mart on the day of Dunn's fall confirm that there was an uneven spot of almost an inch in elevation along the same expansion joint in question. Wal-Mart's witnesses explained that those photographs did not depict the place where—according to the video—they believe Dunn had tripped. Dunn and her daughter went back and took a few close-up photographs of the expansion joint. But, because those photographs were taken looking down at the expansion joint, they do not show whether it was level or not.

Finally, more than a year after Dunn's fall, plaintiff had photographs taken that showed the rear door to the store, a full view of the sidewalk, and the location of the expansion joint in question running from the corner of the building to the asphalt of the parking lot. Wal-Mart argues (1) that the photographs do not depict the condition of the expansion joint on the day that Dunn fell, and (2) that the subsequent repair to the expansion joint that is visible in some of the photographs cannot be offered as proof of negligence. For purposes of this appeal, however, these photographs provide context for the video by showing the relationship between the parking area, the sidewalk, and the rear entrance to the store. In particular, one photograph includes a measuring tape that shows that the expansion joint ran approximately 7 ½ feet from the corner of the building to the asphalt of the parking area.

Dunn filed suit in state court, and Wal-Mart removed the action to federal court on the grounds of diversity of citizenship. Discovery was conducted, and Wal-Mart moved for summary judgment in its favor. Granting Wal-Mart's motion, the district court concluded that—despite an apparently "slight elevation in the sidewalk due to the expansion joint"—the expansion joint was not unreasonably dangerous as a matter of law. The district court explained

that the expansion joint was "hardly uncommon," did not appear to be defective, was "clearly visible to the naked eye," and would not pose an unreasonable risk to a "minimally attentive" shopper walking across it. Alternatively, the district court also found that Dunn could not establish causation because "Kentucky courts have routinely held plaintiffs to be negligent, *and store owners not liable*, when the plaintiff's injuries were caused by her failure to exercise ordinary care." (Emphasis added). Judgment was entered in favor of Wal-Mart, and this appeal followed.

## II.

The district court's grant of summary judgment is reviewed *de novo*. *Gillis v. Miller*, 845 F.3d 677, 683 (6th Cir. 2017). In doing so, we must view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* Summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Because jurisdiction is based on diversity of citizenship, the court must "apply state law in accordance with the controlling decisions of the state supreme court." *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001).

To establish a negligence claim under Kentucky law after the adoption of comparative negligence, "a plaintiff must still prove the defendant owed a duty to the plaintiff, breached that duty, and consequent injury followed." *Shelton v. Ky. Easter Seals Soc., Inc.*, 413 S.W.3d 901, 906 (Ky. 2013). When, as here, the plaintiff is an invitee, "a possessor of land owes a duty to [the] invitee to discover unreasonably dangerous conditions on the land and either eliminate or warn of them." *Id.* at 909 (citing *Ky. River Med. Ctr. v. McIntosh*, 319 S.W.3d 385, 388 (Ky. 2010)). As most recently explained in *Grubb*, "conditions on the land that are not unreasonably

dangerous do not implicate the land possessor's duty of care, and thus injuries arising from such conditions cannot give rise to the possessor's liability." *Grubb v. Smith*, 523 S.W.3d 409, 417 (Ky. 2017) (as modified Aug. 24, 2017). However, in a line of decisions beginning with *McIntosh* in 2010 and continuing through *Grubb* in 2017, the Kentucky Supreme Court has clarified that with the adoption of comparative negligence the landowner's "duty exists regardless of the obviousness of the dangerous condition or 'the invitee's knowledge of the condition.'" *Goodwin v. Al J. Schneider Co.*, 501 S.W.3d 894, 897 (Ky. 2016) (quoting *Shelton*, 413 S.W.3d at 911).

### A.    Kentucky Premises Liability Law

"Under the old common law, conditions on the land could *not* be deemed unreasonably dangerous if they were 'known to the visitor or so obvious to him that he may be expected to discover them.'" *Grubb*, 523 S.W.3d at 417 (emphasis added) (quoting *Bonn v. Sears, Roebuck & Co.*, 440 S.W.2d 526, 528 (Ky. 1969)). "The open and obvious rule came to be applied in much the same way as contributory negligence: as a rule of law whereby courts, by labeling a condition on the property as 'obvious' in effect precluded jury consideration of the condition's reasonableness." *Id.* Rejecting that rule in *Shelton*, the Kentucky Supreme Court held that, "at the very least, a land possessor's general duty of care is not eliminated because of the obviousness of the danger." *Shelton*, 413 S.W.3d at 907. Further, the Court in *Shelton* clarified that although summary judgment was still a "viable concept," "the question of foreseeability and its relation to the unreasonableness of the risk of harm is properly categorized as a factual one, rather than a legal one." *Id.* at 916.

In *Carter*, the Court abrogated Kentucky's long-standing rule "that *natural outdoor hazards* which are as obvious to an invitee as to an owner of the premises do not constitute

*unreasonable* risks to [the invitee] which the landowner has a duty to remove or warn against."

*Carter v. Bullitt Host, LLC*, 471 S.W.3d 288, 291 (Ky. 2015) (quoting *Standard Oil v. Manis*,

433 S.W.2d 856, 858 (Ky. 1968)). Rather, because that rule had relied in large part on

contributory negligence, the Court held that the "open-and-obvious nature of a hazard is, under

comparative fault, no more than a circumstance that the trier of fact can consider in assessing the

fault of any party, plaintiff or defendant." *Id*. at 297 (citing *Shelton*, 413 S.W.3d at 911-12).

Importantly, the Court emphasized that:

> under the right circumstances, the plaintiff['s] conduct in the face of an open-and-
> obvious hazard may be so clearly the only fault of his injury that summary
> judgment could be warranted against him, for example when a situation cannot be
> corrected by any means or when it is beyond dispute that the landowner has done
> all that was reasonable.

*Id*. But, summary judgment was vacated in *Carter* because there were "questions of fact about

whether, and to what degree, the hotel acted reasonably with respect to the icy hazard under its

carport" and "whether Carter acted with ordinary care for his own safety" when walking under

the carport the morning after a winter storm. *Id*. at 299-300.

Most recently, the Court in *Grubb* explained that the shift to comparative fault in

negligence cases "should have restored the jury's principal role" in determining "whether an

'obvious' risk-posing condition on the land was reasonable or not." *Grubb*, 523 S.W.3d at 418.

Moreover, the Court described the "*McIntosh* line of cases" as reflecting a "determined effort to

effect that restoration and to limit holdings, at trial or on appeal, that an obvious risk-posing

condition on the property is 'not unreasonable as a matter of law,' to those rare instances where

they are justified." *Id*. The Court also expressly declined to adopt a trivial-defect rule "under

which pavement flaws satisfying some standard of minimalness are deemed not unreasonable."

*Id*. at 420 (citing cases). Either way, the Court in *Grubb* vacated summary judgment in favor of

the property owner for a second time because there were questions of fact regarding the trivialness or reasonableness of the risk posed by an eroded patch or pothole in the asphalt that the plaintiff tripped on between the gas pumps at the Speedway station. *Id.* at 420-21.[1]

### B.     Analysis

Dunn correctly argues that the district court's reliance, at least in part, on the obviousness of the "slight elevation" in the expansion joint and on Dunn's own negligence in granting summary judgment to Wal-Mart is inconsistent with the controlling Kentucky Supreme Court decisions in *Shelton*, *Carter*, and *Grubb*. Specifically, the district court concluded that the "slight elevation" in the expansion joint was not unreasonable as a matter of law because it "was not an out-of-the-ordinary obstacle," it was "clearly visible to the naked eye," and it would not pose an unreasonable risk to a shopper "who is 'minimally attentive' and use[s] her 'practical faculties of observation' and 'simple powers of ambulation.'" Also, in addressing causation, the district court explained that store owners are not to be held liable when plaintiffs fail to exercise ordinary care for their safety. The order granting summary judgment cannot be affirmed on the basis of this reasoning.

However, the district court also stated that nothing in the record "suggests the expansion joint was not in good repair or [was] otherwise defective." That dovetails with Wal-Mart's contention that there is no evidence that the expansion joint was uneven in the area where Dunn tripped and that the video unequivocally demonstrates that Dunn tripped entirely on her own feet. If Wal-Mart is correct in that regard, this could be one of the rare instances in which

---

[1]Two Kentucky Court of Appeals decisions issued after *Shelton* found summary judgment for the property owner was still appropriate, but those decisions were vacated on appeal and summary judgment was reversed on remand. *See Ward v. JKP Invs., LLC (After Remand)*, No. 2013-CA-1706-MR, 2016 WL 197136 (Ky. Ct. App. Jan. 15, 2016) (plaintiff fell at a party when she stepped on the crumbling corner of a wide concrete step); *Embry v. Mac's Convenience Stores, LLC (After Remand)*, No. 2012-CA-000333-MR, 2014 WL 2640240 (Ky. Ct. App. June 13, 2014) (discretionary review denied Mar. 25, 2015) (plaintiff stepped backwards from his vehicle trailer parked next to a gas pump and fell when he stepped on uneven pavement).

summary judgment would be appropriate because the plaintiff's conduct would be clearly the *only* cause of her injuries. *See Grubb*, 523 S.W.3d at 418 (quoting *Carter*, 471 S.W.3d at 297); *see also McCoy v. Family Dollar Store of Ky., Ltd.*, 525 S.W.3d 93 (Ky. Ct. App. 2017) (discretionary review denied Aug. 16, 2017) (finding the defendant did not breach the duty of care owed to a plaintiff who tripped on a wheel stop in the parking lot because the wheel stop was not defective or damaged, was properly installed, and had reflective yellow striping); *Spears v. Schneider*, No. 2012-CA-00065, 2015 WL 2153310 (Ky. Ct. App. May 8, 2015) (discretionary review denied Dec. 10, 2015) (finding that the level steps from the defendant's store onto a sloped sidewalk was not an unreasonable risk where the steps were well-maintained and well-lit, a handrail was provided, and there was nothing more the defendant could have done to eliminate the hazard).

Here, Dunn testified that she caught her left foot on an uneven sidewalk expansion joint that had an inch or less difference in elevation. Wal-Mart maintains that the video unequivocally demonstrates that, in fact, Dunn tripped on her own feet. Although Wal-Mart's interpretation is a reasonable one, the video itself is not conclusive given the camera's distance from the fall and the grainy resolution of the video. Despite Wal-Mart's insistence to the contrary, it is impossible to tell conclusively from the video whether the expansion joint was level near the spot where Dunn tripped. Moreover, when the evidence in the record is viewed in the light most favorable to Dunn, reasonable minds can differ about whether Dunn tripped on the expansion joint in question and whether the expansion joint was uneven in the spot that she tripped. Dunn testified that it was uneven, and Wal-Mart's photographs show that a portion of the same expansion joint was uneven. Since the expansion joint in question was only 7 ½ feet wide, and Dunn can be seen taking a couple of steps on the sidewalk before she tripped, this court cannot conclude as a

matter of law that Dunn tripped on her own feet and therefore was clearly the only cause of her injuries. *See, e.g.*, *Veloudis v. Wal-Mart Stores East, LP*, No. 2016-CA-00207-MR, 2017 WL 3499927, at *6 (Ky. Ct. App. July 28, 2017) (finding the video could not conclusively establish one way or the other whether the plaintiff tripped on the corner of a pallet on the floor or tripped on his own feet).

Lastly, assuming as we must that Dunn tripped on an uneven expansion joint in the sidewalk, the obviousness of such a risk-posing condition is nothing more than a circumstance that the trier of fact can consider in assessing the fault of either party. *Carter*, 471 S.W.3d at 297. "[A]n obvious risk-posing condition on the property can be unreasonable if, despite the obviousness, the property possessor can still anticipate someone being injured by it." *Grubb*, 523 S.W.3d at 419. As outlined earlier, the Kentucky Supreme Court has repeatedly and explicitly declared that, under comparative fault, the unreasonableness and foreseeability of the risk of harm is normally a question for the jury to determine in deciding whether the defendant breached its duty of care in all but the rarest of circumstances. Indeed, the Kentucky Supreme Court held that an unreasonable risk could be created by a "simple curb" outside an emergency room (*McIntosh*), wires on the floor near a hospital bed (*Shelton*), ice in the parking lot of a hotel after a winter storm (*Carter*), the slipperiness of a wet hotel bathtub (*Goodwin*), and a small pothole between the pumps of a gas station (*Grubb*). *See Goodwin*, 501 S.W.3d at 899. The Kentucky Court of Appeals has likewise held that summary judgment was not appropriate because the reasonableness of the risk and foreseeability of the harm were questions of fact in cases where the plaintiff tripped on the corner of a pallet protruding from the bottom of a store display, fell when stepping backward onto uneven pavement at a gas station, or tripped over a concrete flower pot placed near the exit of a banquet hall. *See Embry (After Remand)*, 2014 WL

2640240, at *6; *Veloudis*, 2017 WL 3499927, at *8; *Rodgers v. Grant Cty. Football Boosters*, No. 2016-CA-000377-MR, 2017 WL 4570711, at *5-6 (Ky. Ct. App. Oct. 13, 2017). Here, the unreasonableness of the risk posed by an uneven sidewalk expansion joint, the foreseeability of harm to an invitee, and whether Wal-Mart breached its duty of care, are questions of fact that should not have been resolved as a matter of law.

*        *        *        *

The district court's order granting summary judgment to Wal-Mart is **REVERSED** and the case **REMANDED** for further proceedings consistent with this opinion.