**Janetta HIGDON, Appellant**

v.

**BUISSON INVESTMENT CORPORATION d/b/a Whispering Hills Apartments, Appellee**

**NO. 2013–CA–001908–MR**

Court of Appeals of Kentucky.

RENDERED: MARCH 4, 2016; 10:00 A.M.

---

**2.** It was ultimately determined that there was no rule violation in the Garcia case.

BRIEF FOR APPELLANT: Mat A. Slechter, Louisville, Kentucky

BRIEF FOR APPELLEE: Michael K. Nisbet, Louisville, Kentucky

BEFORE: COMBS, JONES, AND VANMETER, JUDGES.

*OPINION*

JONES, JUDGE:

This is a premises liability case. The Appellant, Janetta Higdon, filed suit against her landlord, the Buisson Investment Corporation d/b/a Whispering Hills

Apartments ("Whispering Hills"), after she slipped on ice and fell outside of her apartment building. The Jefferson Circuit Court granted summary judgment to Whispering Hills after finding the ice Higdon slipped on was an open and obvious hazard and Whispering Hills did not have a duty to foresee Higdon's injury. On appeal, Higdon argues that the circuit court did not employ the correct standard in assessing Whispering Hills' duty. For the reasons set forth below, we REVERSE and REMAND.

## I. Background

In May of 2007, Higdon leased an apartment from Whispering Hills. Higdon's unit was connected to the parking lot of her apartment complex by a wooden ramp that sloped downward from her patio to the parking lot. The morning of February 6, 2012, was cold and foggy. Higdon recalls the temperature as being around the freezing mark. Because of the cold, Higdon planned to start her car and let it warm up before leaving for work. Higdon testified that when she looked out her window, she did not see any frost on her car and the walkway appeared to be dry. However, when Higdon stepped on the wooden walkway and reached for the handrail, both of her feet slipped out from under her. On instinct, Higdon extended her left arm to try to catch herself, but was unable to prevent herself from falling to the ground. She landed on her left hand and hip. Higdon testified that the walkway felt damp when she landed on it. She believes the dampness was a result of the fog.

After the fall, Higdon telephoned her husband. She told him about her fall and asked him to leave his work to take her to the doctor. He complied and took Higdon to an immediate care center. Ultimately, Higdon was diagnosed with a severe tear

to her left rotator cuff, complete with separation of tendons from bone. She underwent surgery for her injuries on March 23, 2012.

On May 29, 2012, Higdon filed suit against Whispering Hills. In her complaint, Higdon alleged that Whispering Hills was negligent insofar as it:

Created hazardous conditions when it negligently and carelessly installed and maintained a sloping wooden walkway that was exposed to the elements and failed to furnish any type of nonslip surface on said walkway. Thereafter, [Whispering Hills] failed to regularly and properly inspect the property for such hazards, failed to eliminate the hazard, and failed to warn residents of the hazard.

(R. at 2).

Whispering Hills answered Higdon's complaint. It denied liability on several grounds, including Higdon's allegation that it had breached any legal duty to maintain the walkway. After some initial discovery, Whispering Hills moved the circuit court to enter summary judgment in its favor. In its motion, Whispering Hills asserted that the fog and accompanying dampness on the walkway did not constitute a dangerous condition of which Whispering Hills had actual or constructive knowledge. Higdon argued that summary judgment was improper because there were genuine issues of material fact present with respect to Whispering Hills' duty to provide a safe walkway. Referencing the allegations in her complaint, Higdon asserted that her case was not about Whispering Hills' failure to remove the dampness or warn her about it on the morning in question as was the case in the snow and ice cases cited by Whispering Hills. Higdon explained that her allegations differed from those cases in that she was alleging that Whispering Hills was negligent in constructing and

maintaining the walkway. Specifically, Higdon asserted that Whispering Hills should have appreciated the danger a "sloping bare wood ramp with no slip-resistant paint or adhesive application" posed to its residents.

By Opinion and Order entered September 26, 2013, the circuit court granted summary judgment in favor Whispering Hills. The Opinion and Order states as follows:

> As a general rule, land possessors owe a duty to invitees to discover unreasonably dangerous conditions on the land and to either correct them or warn of them. *Perry v. Williamson*, 824 S.W.2d 869, 875 (Ky.1992). However, the open and obvious doctrine states that land possessors cannot be liable to invitees who are injured by open and obvious dangers. But trial courts should not merely label a danger as "obvious" and then deny recovery. *Kentucky River Medical Center v. McIntosh*, 319 S.W.3d 385 (Ky. 2010). Rather, they must ask whether the land possessor could reasonably foresee that an invitee would be injured by the danger. *Id.* If the land possessor can foresee the injury, but nevertheless fails to take reasonable precautions, he can be held liable. *Id.*
>
> Here, Higdon was familiar with the walkway and slipped on ice. Generally, a landowner does not owe an invitee a duty to protect him from natural outdoor hazards, such as snow and ice, which are equally obvious to the invitee and to the landowner; natural hazards do not constitute an unreasonable risk which the landlord has a duty to remove or warn against. *Horne v. Precision Cars of Lexington, Inc.*, 170 S.W.3d 364, 368 (Ky.2005), *Standard Oil v. Manis*, 433 S.W.2d 856, 858 (Ky.App.1968). The Court finds that the ice Higdon slipped on was an open and obvious hazard.

However, once a danger is established to be open and obvious, "[t]he inquiry shifts to whether the invitee was foreseeably distracted[.]" *Faller v. Endicott–Mayflower, LLC*, 359 S.W.3d 10, 15 (Ky.App.2011) (no duty because invitee was not distracted and was not acting under time-sensitive or stressful circumstances; instead she was well aware of the condition of the parking lot and was proceeding with caution.) Higdon does not claim that she was distracted while leaving her apartment. The Court finds that Whispering Hills did not have a duty to foresee Higdon's injury under *McIntosh*. Accordingly, the Court grants Whispering Hills Motion for Summary Judgment.

(R. at 63).

## II.  Standard of Review

Pursuant to Kentucky Rules of Civil Procedure 56.03, summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The party moving for summary judgment bears the initial burden of showing that no genuine issue of material fact exists, and then the burden shifts to the party opposing summary judgment to present "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky.App.2001) (quoting *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 482 (Ky.1991)).

When reviewing a motion for summary judgment, a trial court must be mindful that its role is to determine whether disputed material facts exist; it is not to

decide factual disputes. As our Supreme Court recently reminded us:

> Summary judgment is to be "cautiously applied and should not be used as a substitute for trial." Granting a motion for summary judgment is an extraordinary remedy and should only be used "to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." The trial court must review the evidence, not to resolve any issue of fact, but to discover whether a real fact issue exists.

*Shelton v. Kentucky Easter Seals Soc'y, Inc.*, 413 S.W.3d 901, 905 (Ky.2013) (internal citations omitted).

■ Because summary judgment involves no fact-finding by the trial court, we accord no deference to the trial court's decision; our review is *de novo*. See *Davis v. Scott*, 320 S.W.3d 87, 90 (Ky.2010) (citing *3D Enters. Contracting Corp. v. Louisville & Jefferson Cty. Metro. Sewer Dist.*, 174 S.W.3d 440, 445 (Ky.2005)).

### III. Analysis

■ "A landlord owes a heightened duty of care to its tenants in contrast to the duty a landowner owes to a business invitee." *Whatley v. Blue Lick Apartments, Ltd.*, 200 S.W.3d 497, 499 (Ky.App. 2006). A landlord owes not only a duty to warn, but also a duty to "exercise reasonable diligence to keep common areas retained under the landlord's control in a safe condition for the tenants." *Davis v. Coleman Mgmt. Co.*, 765 S.W.2d 37, 38 (Ky.App.1989). "[T]he open and obvious doctrine [does] not preclude recovery when the common area exception applie[s]." *Warren v. Winkle*, 400 S.W.3d 755, 761 (Ky.App.2013).

■ In this case, Higdon alleged, at least in part, that Whispering Hills was negligent insofar as it "installed and maintained a sloping wooden walkway that was exposed to the elements and failed to furnish any type of nonslip surface on said walkway." Higdon further alleged that Whispering Hills also breached its duty to her by failing to "regularly and properly inspect the property for hazards, failed to eliminate the hazard, and failed to warn residents of the hazard." Whispering Hills presented no evidence that the walkway, which was located wholly outside of Higdon's property, was not in the common area of the complex.

This being the case, we find *Warren, supra,* particularly instructive. In *Warren*, the tenant brought a negligence action against her landlords, alleging that the landlords failed to maintain the roof above her apartment in a multifamily residential dwelling in reasonably safe condition, and seeking damages for personal injuries sustained when the ceiling collapsed in her apartment. The trial court granted summary judgment. We reversed and remanded. On remand, we noted that to prevail at trial, the tenant would have to present evidence to establish her landlords "knew or should have known that a dangerous condition existed" on the roof. We explained,

> As noted in Comment a to the Restatement (Second) of Torts § 361 (1965), a tenant's knowledge of a dangerous condition will not absolve the landlord from liability. This is consistent with Kentucky law applicable to a landlord's duty to keep common areas in a reasonably safe condition, which is equally applicable when the landlord retains exclusive control of an area.

In *Davis,* the Court held that the open and obvious doctrine did not preclude recovery when the common area

exception applied. It was pointed out that the rule "does not impose an undue burden on the landlord" and "[t]he landlord's actions should be evaluated according to what is reasonable under all the circumstances." *Davis*, 765 S.W.2d at 39. Turning to the factors to be considered, the Court emphasized that "[t]he landlord's actual or constructive notice of the hazardous conditions is, of course, a significant factor" as well as the opportunity to remedy the defect and the reasonableness of the tenant's actions. *Id.* Although the Winkles' conduct and Warren's conduct will be subject to a reasonableness test, Warren's mere knowledge of a defect in the ceiling does not preclude her recovery.

*Id.* at 761.

The circuit court's opinion and order focused solely on Whispering Hills' duty (or lack thereof) to warn of or remedy the condensation and dampness on the walkway. In doing so, it ignored that Higdon's allegations were much broader. In fact, in her response to Whispering Hills' motion for summary judgment, Higdon expressly pointed out that her case was "not about fog and accompanying dampness." She went on explaining that her "case is about a sloping bare wood ramp with no slip-resistant paint or adhesive applications that was ill-equipped to safely accommodate pedestrians with even the slightest natural accumulation." In her response, Higdon also cited to various building standards indicating that sloped walkways, which cannot be made flush, should be made to be "slip resistant under expected environmental conditions and use."

Based on the record, it appears that the walkway in question was slightly inclined. And, according to Higdon, it was not equipped with any slip resistant materials. It is unclear whether the building standards cited by Higdon applied to this walkway or whether Whispering Hills had ever taken any action to make the walkway slip resistant.

Given Whispering Hills' heightened duty as a landlord, the lower court should have allowed this matter to go to the jury to decide whether Whispering Hills knew or should have known that a dangerous condition existed with respect to the construction and maintenance of the walkway, and if so, whether it breached its duty to maintain the walkway in a safe condition for its tenants such as by equipping it with some nonslip material or otherwise taking actions to warn of or prevent falls due to slippery conditions.[1] The "open and obvious" nature of the fog and ensuing conden-

---

1. *See, e.g., Newton v. Magill*, 872 P.2d 1213, 1218 (Alaska 1994) ("A jury could find that a landlord in such an area should take any one of a number of steps relating to the physical condition of the premises which would prevent a board walkway from becoming dangerously slippery when wet."); *Sarmiento v. C & E Associates*, 40 A.D.3d 524, 527, 837 N.Y.S.2d 57, 60 (N.Y.A.D. 1 Dept.2007) (holding that plaintiff's claim alleging that defendant landlord breached a duty of care because its steps were too slippery should reach the jury as the plaintiff cited a provision in the building code regarding proper materials for step construction and it was unclear whether that provision applied to the steps in question); *Skupienski v. Maly*, 27 N.J. 240, 142 A.2d 220 (N.J.1958) (holding that in an action by a tenant in duplex dwelling against landlords for injuries sustained by tenant when she slipped on patch of ice that had formed on sidewalk located on landlords' premises as result of water dripping from a small canopy, which had no gutter, evidence was sufficient to raise jury to question whether canopy was improperly constructed because it did not have a gutter.); *Kwait v. John David Management Co.*, 42 Ohio App.2d 63, 329 N.E.2d 702 (Ohio App.1974) (holding that complaint against landlords for injuries sustained by tenant who slipped and fell on walkway where snow had been removed and piled along sidewalk and had melted onto the sidewalk and then frozen stated cause of action).

sation was an inappropriate basis upon which to grant summary judgment as the surface at issue was located within the common area of the apartment complex.

### IV. Conclusion

For the foregoing reasons, the Jefferson Circuit Court's order is REVERSED, and this matter is REMANDED to the circuit court for further actions consistent with this Opinion.

COMBS, JUDGE, CONCURS.

VANMETER, JUDGE, CONCURS IN MAJORITY OPINION AND WRITES SEPARATELY.

VANMETER, JUDGE, CONCURRING:

I concur in the result reached because recent decisions of the Kentucky Supreme Court mandate that this case is inappropriate for summary judgment. *See, e.g., Carter v. Bullitt Host, LLC,* 471 S.W.3d 288, 296–99 (Ky.2015).