RENDERED: APRIL 23, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0787-MR

STEVEN COFFMAN　　　　　　　　　　　　　　　　　　APPELLANT

v.　　　　　　APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE ERNESTO SCORSONE, JUDGE
ACTION NO. 18-CI-00416

OLLIE STEELE　　　　　　　　　　　　　　　　　　　　　APPELLEE

## OPINION
## REVERSING AND REMANDING

** ** ** ** **

BEFORE: ACREE, GOODWINE, AND JONES, JUDGES.

JONES, JUDGE: Steven Coffman appeals an order of the Fayette Circuit Court

granting summary judgment in his action against his landlord, Ollie Steele.

Coffman alleged he sustained serious burn injuries to his feet when he placed them

in a foot bath he filled with hot water in his apartment. In his pleadings before the

trial court, Coffman argued Steele negligently installed a hot water heater, leading

to his injuries, and that Steele retaliated against him when he filed the present

action. He now alleges (1) the circuit court applied the incorrect standard of care; (2) the circuit court erroneously granted summary judgment on Coffman's negligence *per se* claim; (3) the circuit court erroneously granted summary judgment on Coffman's claims under the URLTA;[1] and (4) the circuit court erroneously granted summary judgment on Coffman's civil claim alleging Steele tampered with physical evidence. Having carefully reviewed the record in conjunction with all applicable law, we reverse and remand.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Ollie Steele owns a number of rental properties. Steven Coffman has been renting from Steele in various locations for the last twenty years. Coffman currently resides with his girlfriend at one of Steele's apartments located in a multi-unit building at 142 East Fourth Street in Lexington. Up until the events giving rise to this litigation, Coffman and Steele enjoyed a friendly relationship. Coffman signed his current lease in 2006.

At 142 East Fourth Street, there are five units. The water heater is housed in a cellar accessible from the outside of the building. According to Coffman, the cellar door is typically locked, although Steele disputes this characterization. All five units are serviced by one 50-gallon residential gas hot

---

[1] Uniform Residential Landlord Tenant Act. Kentucky Revised Statute (KRS) 383.500 authorizes cities, counties, and urban-county governments to enact the provisions of the URLTA. The Act has been adopted in Fayette County.

water heater. Coffman's apartment is located directly above the cellar housing the water heater. His unit features a hot-water tap and a cold-water tap.

Coffman suffers from diabetes and neuropathy, causing numbness to his feet.[2] To alleviate his pain, he indulges in foot baths. Unfortunately, these foot baths have resulted in at least two incidents whereby Coffman has burned his feet. The first incident occurred in 2014. Coffman filled an electric foot bath with water and soaked his feet for approximately ten minutes. The resulting burns required Coffman to receive skin grafts, and he was treated for infection after being in the hospital for nearly two weeks. Coffman's girlfriend informed Steele of the incident but stated it was her fault for not checking the temperature of the water. Coffman's burns eventually healed, and he elected not to pursue legal action against Steele. Immediately after the incident, Steele had his regular plumber, Mike Watson, check the water heater. Watson informed Steele everything was set on the normal settings. Prior to 2014, Steele never received any complaints about the water temperature in the building.

Steele replaced the water heater in 2015 and installed the new unit himself. Using the instructions provided by the supply store, he set the temperature control to "A," the recommended setting, using the chart provided by

---

[2] On one occasion, Coffman reportedly did not notice he had stepped on a nail.

the store where he purchased the water heater. The "A" setting is 125 degrees Fahrenheit (F). A plumber examined the water heater prior to Steele's deposition and recorded the temperature at 138 degrees F.

The second incident, the subject of the present action, occurred in April of 2017. Coffman filled a foot bath with hot water from the bathroom sink. He checked the temperature with his hand. Believing the water was a little too hot, he added cold water and decided the temperature was acceptable. He only soaked his feet for two to three minutes, but then he noticed his feet were burned the following day. Coffman underwent follow-up treatments to address the burns.

Following the incident, Coffman informed Steele he had been burned. Steele spoke to the other tenants, who informed him there was nothing wrong with their water temperature. Steele did not test the water with his hand or a thermometer. Watson inspected the heater and he reported everything appeared normal, on the "A" setting. However, Watson did not check the temperature of the water in Coffman's apartment.

In May of 2017, Coffman sent a preservation of evidence letter to Steele, notifying him legal action would be forthcoming. In February of 2018, Steele replaced the pipes at the apartment after they purportedly froze; however, other reports have stated the pipes burst. He also turned the water to the building

-4-

off several times to replace a washer and the pipes.[3]  As a result, there is no proof in the record showing the water heater's setting at the time of the injury.  Watson testified the pipes had not burst but had been leaking in a few spots.  He stated he did not touch the actual water heater, other than connecting the new pipes to the top of the heater.  He further stated it was unnecessary for him to turn the water off to accomplish this task.  Coffman would later argue these activities constituted tampering with the physical evidence relevant to his suit against Steele.

Regarding the installation of the water heater, Watson testified a master plumber must install a water heater, pull a permit, and have a site inspector inspect it and mark it with a tag, according to the Kentucky State Plumbing Code (KRS 318.010 *et seq.*).  The water heater at 142 East Fourth Street does not contain such a tag.  Watson further testified there are no rules or regulations requiring a water heater to be set at any particular temperature setting.

Coffman filed suit in Fayette Circuit Court alleging various tort-based claims against Steele.  First, Coffman claimed Steele was negligent regarding the installation, choice of setting, and/or maintenance of the hot water heater.  Second, Coffman claimed negligence *per se*, asserting Steele violated the regulations and statutes required for the installation of a hot water heater.  Third, Coffman claimed

---

[3] The replacement of the washer occurred the day prior to Coffman's inspection of the water heater.

violations, including retaliation, under the URLTA. Fourth, and finally, Coffman claimed in the alternative that Steele committed a civil tort amounting to tampering with physical evidence. After the taking of depositions, Steele moved for summary judgment. The trial court granted summary judgment, relying on the common law rule that landlords do not owe a duty for known conditions of the land. This appeal followed.[4]

## II.   STANDARD OF REVIEW

Our standard of review on a motion for summary judgment is well-established.

> Summary judgment is to be "cautiously applied and should not be used as a substitute for trial." Granting a motion for summary judgment is an extraordinary remedy and should only be used "to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." The trial court must review the evidence, not to resolve any issue of fact, but to discover whether a real fact issue exists.

---

[4] While Coffman's brief contains citations to the record, an appellant's brief must also "contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." Kentucky Rules of Civil Procedure (CR) 76.12(4)(c)(v). "A brief may be stricken for failure to comply with any substantial requirement" of the appellate rules for briefing. CR 76.12(8). In this case, we have elected not to strike Coffman's brief because the record is relatively short and the citations provided throughout have allowed us to conduct a meaningful review. However, counsel is reminded that "[i]t is not the function or responsibility of this court to scour the record on appeal to ensure that an issue has been preserved." *Koester v. Koester*, 569 S.W.3d 412, 415 (Ky. App. 2019). Other panels may not exercise such leniency should counsel fail to follow the briefing requirements in future appeals.

*Higdon v. Buisson Investment Corporation*, 485 S.W.3d 752, 756 (Ky. App. 2016)

(quoting *Shelton v. Kentucky Easter Seals Soc'y, Inc.*, 413 S.W.3d 901, 905 (Ky.

2013)). Furthermore,

> a trial court must view the record in a light most
> favorable to the non-moving party, resolving all doubts in
> its favor. *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807
> S.W.2d 476, 480 (Ky. 1991). The trial court may grant
> summary judgment only if it concludes that no disputed
> issues of material fact exist for trial. *Id.* On appeal of a
> summary judgment, we must determine whether the trial
> court correctly found that the moving party was entitled
> to a judgment as a matter of law. *Id.* Because summary
> judgment involves questions of law, we need not defer to
> the trial court's conclusions; accordingly, we review the
> record *de novo*. *Blevins v. Moran*, 12 S.W.3d 698, 700-
> 01 (Ky. App. 2000).

*Waugh v. Parker*, 584 S.W.3d 748, 750-51 (Ky. 2019).

### III. ANALYSIS

The general rule with respect to landlord-tenant relationships is that

there is no obligation upon the landlord to repair the leased premises in the absence

of a special agreement to do so. *True v. Fath Bluegrass Manor Apartment*, 358

S.W.3d 23, 26 (Ky. App. 2011). Nor will a landlord be liable for personal injuries

"caused by defects in the leased premises unless the condition is unknown to the

tenant and not discoverable through reasonable inspection." *Id*. (quoting *Pinkston*

*v. Audubon Area Community Services, Inc.*, 210 S.W.3d 188, 190 (Ky. App. 2006)

(internal citations omitted)); *Milby v. Mears*, 580 S.W.2d 724 (Ky. App. 1979).

-7-

Upon granting summary judgment, the circuit court relied on this general rule.

However, as with every general rule, there are exceptions. One of the exceptions is

the common area exception.

> When determining whether a residential landlord is liable
> for injuries sustained on leased property, there is a
> critical distinction between properties leased wholly by
> one tenant, and properties leased by numerous tenants.
> When a tenant maintains complete control and possession
> over the premises and the landlord has no contractual or
> statutory obligation to repair, the landlord is only liable
> for "the failure to disclose known latent defects at the
> time the tenant leases the premises." However, when a
> portion of the premises is retained by the landlord for the
> common use and benefit of numerous tenants, the
> landlord must exercise ordinary care to keep common
> areas in a reasonably safe condition.

*Jaimes v. Thompson*, 318 S.W.3d 118, 119-20 (Ky. App. 2010) (quoting *Carver v.*

*Howard*, 280 S.W.2d 708, 711 (Ky. 1955)).

This distinction is perhaps best illustrated by comparing *Waugh*,

*supra*, and *Warren v. Winkle*, 400 S.W.3d 755 (Ky. App. 2013). In *Waugh*, the

tenant of a rented single-family home fell off the porch due to a poorly maintained

railing. 584 S.W.3d at 750. The tenant, from her prior inspection of the home,

was aware of the condition of the railing. She sued her landlord for personal

injuries, alleging a statutory duty under the URLTA constituted negligence *per se*,

and for violations of the common law. *Id*. at 751, 753. Significantly, the *Waugh*

Court noted that the facts of the case did not involve a common area. *Id*. at 754.

The Kentucky Supreme Court ultimately found the landlord was not liable to the tenant because she was well aware of the condition of the railing. *Id*. at 754.

In contrast, in *Warren*, an apartment dweller brought a negligence action against her landlords, claiming they had failed to keep the roof in a reasonably safe condition when the ceiling collapsed inside her rented apartment. 400 S.W.3d at 756. We found the ceiling inside her rented apartment was not a common area. *Id*. at 759-60. However, we found the area between the roof and the ceiling was a common area, and the tenant did not have a responsibility to maintain that area. *Id*. at 761.

The Restatement (Second) of Torts § 361 extends liability to "[a] possessor of land who leases a part thereof and retains in his own control any part which is necessary to the safe use of the leased part[.]" The lessor is liable if he or she "(a) could have discovered the condition and the risk involved, and (b) could have made the condition safe." *Id.*; *see also Warren*, 400 S.W.3d at 760; *Higdon*, 485 S.W.3d 752. Comment b of the Restatement (Second) of Torts § 361 extends to the maintenance of water systems. A water heater that services all units within a multi-unit building falls squarely within that category.

Furthermore, Comment a of the Restatement (Second) of Torts § 361 provides that "a tenant's knowledge of a dangerous condition will not absolve the landlord from liability." *Warren*, 400 S.W.3d at 761; *see also Davis v. Coleman*

*Management Co.*, 765 S.W.2d 37, 39 (Ky. App. 1989). This reasoning applies when a landlord retains exclusive control of an area. *Warren*, 400 S.W.3d at 761.

Moreover, we find Comment b, Illustration 2 of the Restatement (Second) of Torts § 361 to be particularly persuasive:

> A leases to B, a dentist, an office in which A supplies hot and cold water from a central heating plant. Through the carelessness of A's janitor, to whom A entrusts the repairing of the heating system, the hot water is permitted to run in the cold water pipes. C, a patient of B, goes to the washstand to wash his hands and turns on the cold water spigot, which admits boiling hot water, scalding C's hands. A is subject to liability to C.

Based on the foregoing, we are of the opinion that the trial court should have allowed this matter to proceed to a jury given Steele's duty as a landlord over common areas, the common nature of the water heater, and its location. There is a question of fact that remains as to whether the cellar door was locked or unlocked. Coffman might be able to control the two water taps within his apartment; however, the pipes and the water heater are not under his exclusive control. The pipes and the water heater are under the exclusive control of the landlord, for the common benefit of all tenants. The landlord has a duty to exercise ordinary care with respect to common areas and to keep them in a reasonably safe condition. *Higdon*, 485 S.W.3d at 756.

-10-

We express no opinion as to the underlying merits of the case. A jury, as the trier of fact, can decide whether Steele exercised ordinary care with respect to the water heater maintenance, repair, or installation. That Coffman had knowledge of his susceptibility to burns and was on notice due to his prior burns is likewise a matter for the jury to consider. We therefore reverse and remand to allow this matter to proceed toward a jury trial.

Because we have determined the trial court erroneously applied the common law landlord-tenant rule and reverse on that basis, we do not need to address Coffman's remaining claims. However, as guidance to the trial court we note the following. The trial court, for unknown reasons, did not address Coffman's claims for retaliation. Instead, the trial court appeared to mislabel this claim as one for personal injuries under the URLTA. On remand, the trial court is directed to address whether Steele's actions amounted to "unlawful ouster, exclusion, or diminution of services" (Record at 335) as pleaded in the complaint.

We would also note on remand that the trial court properly addressed Coffman's claim for spoliation of evidence. Coffman pleaded a civil claim for tampering with physical evidence under a negligence *per se* theory. *See* KRS 524.100. Coffman pleaded this claim in the alternative, in the event he is unable to prevail on his claim at trial. It has long been held there is no tort for spoliation of

evidence in Kentucky. *Monsanto Co. v. Reed*, 950 S.W.2d 811, 815 (Ky. 1997). Rather, the proper remedy, when applicable, is a missing evidence instruction. *Id.*

## IV. CONCLUSION

For the foregoing reasons, we reverse the Fayette Circuit Court's order granting summary judgment and remand for further proceedings consistent with this opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Jessica Winters
Lexington, Kentucky

BRIEF FOR APPELLEE:

Katherine Hornback
Lexington, Kentucky